## CAMPBELL et al. v. JONES & LAUGHLIN STEEL CORPORATION.

Civ. A. No. 5788.

United States District Court
W. D. Pennsylvania.

Jan. 24, 1951.

wrote an excellent opinion supporting its decision refusing to permit the cousin to recover.

190

Jason Richardson, Pittsburgh, Pa., for plaintiffs.

Alan D. Riester, of Brandt, Riester & Brandt, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

Sixty-two plant guards of the Jones & Laughlin Steel Corporation brought this action under the Fair Labor Standards Act of 1938 [1] to recover from the corporation unpaid overtime compensation, liquidated damages and attorneys' fee and costs. The question presented was whether the plaintiffs were entitled to be paid on the basis of a twenty-four hour day for the time they spent as guards in the plant of the defendant during a strike from January 18, 1946 to February 9, 1946. The case was tried in this court before Judge Nelson McVicar in March, 1947, and on April 4, 1947 Judge McVicar filed his Findings

---

1. June 25, 1938, c. 676, §§ 1–19, 52 Stat. 1060–1069, 29 U.S.C.A. §§ 201–219.

of Fact, Conclusions of Law and Opinion holding that each plaintiff was entitled to be paid on the basis of a twenty-four hour day for the time spent on the premises of the defendant during the strike. 70 F. Supp. 996.

The motion for a new trial filed by the corporation was refused and on April 25, 1947, the Court filed its Order for Judgment. This judgment was entered against the defendant and in favor of all of the plaintiffs in the total sum of $31,113.12, which included liquidated damages. It further provided that the defendant should pay an attorneys' fee and costs.

On April 30, 1947, the defendant filed its notice of appeal. On May 14, 1947, the President of the United States signed into law the Portal to Portal Act of 1947.[2] On June 30, 1947, the Court of Appeals for the Third Circuit remanded the case in order that the District Court might consider and act upon a motion of the defendant to open and vacate, or modify, the judgment entered on April 25, 1947, and to reinstate and reconsider the defendant's motion for a new trial in the light of the Portal to Portal Act.

The plaintiffs objected to the trial judge considering this phase of the case, and the defendant objected to having the case assigned to another judge. A hearing was held by this court after it was ascertained that the learned trial judge had no objections, and because further delay seemed inappropriate.

In support of its motion to vacate or modify the judgments, the defendant contends: (1) the claims are barred by Section 2 of the Portal to Portal Act; (2) any contract which might be said to have existed did not extend beyond January 25, 1946, because on that date the company representative informed the guards' committee of the established pay policy of the company; (3) the defendant, in good faith, relied on Interpretative Bulletin No. 13 issued by the Wage and Hour Division of the Department of Labor to determine its pay policy, and by Section 9 of the Portal to Portal Act, it is completely released from any liability to the plaintiffs; (4) in any event, by Section 11 of said Act, the court should modify the judgments to eliminate the liquidated damages and provide for single payments only.

None of these contentions can be sustained.

It appears from the findings of the learned trial judge that Captain C. D. Nicholson was the representative of the corporation in charge of the plant guards. These employees ordinarily worked an eight hour day and returned to their homes, but they were told that in the event of an expected strike they would have to live in the plant. The defendant contemplated that maintenance and plant protection personnel would not be able to leave the plant during the strike.[3] Nicholson reported to the committee representing the plant guards that during a previous strike in 1937, the guards living in the plant were compensated for the full twenty-four hour day and that there was no reason why the present guards should not receive the same treatment and that "they might even get a bonus." Nicholson then proposed that in the event of a strike the guards would work eight hours on duty and eight hours off duty "around the clock in each 24 hour period." He stated that during the strike the plaintiffs would be paid on a twenty-four hour basis or around the clock. The committee agreed. When the strike started on January 18, 1946 the plaintiffs lived in the plant until the strike ended on February 9, 1946, subject to call twenty-four hours a day and they were called at various times during their off duty hours.

2. May 14, 1947, c. 52, §§ 1–13, 61 Stat. 84–90, 29 U.S.C.A. §§ 251–262.

3. See defendant's Exhibit "1", wherein a letter written by defendant's attorney on January 9, 1946, in anticipation of the nation-wide steel strike then scheduled for January 14, 1946, states: "It is contemplated that the United Steelworkers will maintain picket lines at the various plants, and that they will refuse to permit any employes, supervisory or otherwise, to enter the plants. * * * It is recognized that practical considerations will prevent the employes from leaving the plants since, no doubt, they would be unable to return."

Moreover, the defendant paid the plaintiffs for twenty-four hours a day for the first two days of the strike. The committee was authorized by plaintiffs to represent them and the apparent authority of Captain Nicholson to represent the defendant is fully established.

■ It is the opinion of this court that these facts establish a nonwritten contract which expressly provided for the compensation of the guards on a twenty-four hour basis. It is established by the Captain's proposition agreed to by the committee and consummated by the substantial performance of the plaintiffs.[4] The defendant acted upon it by paying plaintiffs "around the clock" for two days. Therefore, plaintiffs' eating and sleeping time or off time in the plant of the defendant, if regarded as an "activity", was compensable by an express provision of a contract within the meaning of Section 2(a)(1) of the Portal to Portal Act.[5] For this reason the first contention of the defendant for relief must be rejected.[6]

On January 25, 1946, the defendant attempted to modify the contract by establishing the following pay policy: the guards were notified by Captain Nicholson that they would be paid for a minimum of twelve hours per day with overtime for all hours worked in excess of eight in any day and for all hours in excess of forty for each week. Apparently this attempted modification was resented by plaintiffs because on January 31, 1946, the plaintiffs were advised by Captain Nicholson that if they left the plant their commissions as special patrolmen would be revoked.

■ When defendant omitted to pay plaintiffs on a twenty-four hour basis it breached the contract. In view of the fact that the guards were threatened with the revocation of their commissions if they left the plant of the defendant, it cannot be said that by remaining in the plant they accepted or consented to the announced change in pay policy. It seems that this pay policy was belatedly made known to plaintiffs or their committee by Captain Nicholson about eight days after the strike started. The offer was made and acceptance procured when it was urgently

4. The negotiations between the parties culminated in a contract which this court might construe as either bilateral or unilateral. The American Law Institute, Restatement of Contracts, § 31, states that where there is a doubt the presumption is in favor of a bilateral contract. Under this construction when the committee agreed with the defendant's offer, the parties entered into a bilateral contract. If we hold that the defendant's offer contemplated performance by the plaintiffs rather than a return promise, the contract would be held unilateral. "* * * an offer of a price for goods, or for services, becomes a contract when what is requested is given or done, though no obligation to give or to do anything ever exists." Williston on Contracts, 2d Ed., Vol. 1, page 20. See also American Law Institute, Restatement of Contracts, § 12.

5. "Relief from certain existing claims under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, and the Bacon-Davis Act

"(a) No employer shall be subject to any liability or punishment under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act (in any action or proceeding commenced prior to or on or after May 14, 1947), on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any activity of an employee engaged in prior to May 14, 1947, except an activity which was compensable by * * *

"(1) an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer; * * *." May 14, 1947, c. 52, § 2 (a) (1), 61 Stat. 85, 29 U.S.C.A. § 252 (a) (1).

6. It was found as a fact and as a conclusion of law by the trial judge that all of the time each plaintiff was in the plant of the defendant during the strike was time worked for the benefit of the defendant (Finding No. 39—Conclusion of Law No. 3). Section 2 of the Portal to Portal Act does not apply to actual time worked and for this reason alone, irrespective of an express contract, the claims of the plaintiffs are not barred by this section of the Act. Central Missouri Tel. Co. v. Conwell, 8 Cir., 1948, 170 F. 2d 641.

necessary to provide for the plant's protection; therefore, this untimely attempt to modify the contract after defendant had received a substantial portion of the benefits under it cannot receive judicial sanction.[7] The second contention of the defendant must be refused.

The third and fourth reasons for relief may be disposed of together. To receive the relief provided in Section 9 of the Portal to Portal Act, defendant employer was required to prove that its failure to pay overtime compensation was *in good faith* in conformity with and in reliance on any administrative regulation, order, ruling, approval or interpretation of any agency of the United States with respect to the class of employers to which it belonged. Under Section 11 if the failure to pay overtime was *in good faith* and this employer had reasonable grounds for believing this omission was not a violation of the overtime section[8] of the Fair Labor Standards Act, the court may relieve it of all or part of the liquidated damages.

Defendant attempted to meet this proof by showing that it formulated for these plaintiffs a pay policy upon advice of its attorney, R. H. Strub, who in turn relied upon Interpretative Bulletin No. 13 issued by the Wage and Hour and Contracts Division of the Department of Labor, and Supreme Court decisions, Armour & Co. v. Wantock et al., 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118, and Skidmore et al. v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124. This is the pay policy stated above of which plaintiffs were apprised on January 25, about one week after the strike had started.

It does not seem to this court, after scrutiny of the agreement and all of the circumstances, that this pay policy formulated by defendant is in conformity with or made in reliance on Bulletin No. 13 or on the Supreme Court cases cited. As pointed out in the latter, each case must be decided upon its own facts. Here the facts found relating to the living quarters furnished, the offer to pay around the clock, the irregular eating and sleeping hours, the call to duty during eating and sleeping hours, the fact that the time spent in the plant was for the sole benefit of the defendant, the loss of personal freedom to go home after work, and others, present a factual situation entirely different from the illustrations in the Bulletin or in the Supreme Court cases. The most that can be said is that if there had been no contract, the Bulletin and cases may have afforded the company attorney reasonable grounds for formulating his advice. But it is not necessary to so decide.

It would be only in the event that no contract had been made to pay plaintiffs on a twenty-four hour basis that these sections can be relied upon for relief. Advice of attorney and reliance upon inter-

---

7. Of course, if we construed the contract to be bilateral it could not be subsequently modified by one of the parties without the consent of the other. If we construed the contract as unilateral the same result is reached by virtue of § 45, Restatement of Contracts, American Law Institute, which reads as follows: "If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated in the offer, or, if no time is stated therein, within a reasonable time."

And in Comment b to the above section, it is further stated: " * * * The main offer includes as a subsidiary promise, necessarily implied, that if part of the requested performance is given, the offeror will not revoke his offer, * * *."

8. "No employer shall * * * employ any of his employees * * *

\* \* \* \* \* \*

"(3) for a workweek longer than forty hours * * * unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." June 25, 1938, c. 676, § 7, 52 Stat. 1063, as amended Oct. 29, 1941, c. 461, 55 Stat. 756, 29 U.S.C.A. § 207(a) (3).

194

pretations, no matter how authoritative, could not serve to supersede the contract.

■ The "good faith" as used in these sections is objective and requires that the employer have no knowledge of circumstances which ought to have put it upon inquiry.[9] It is clear that defendant knew of the agreement made by Captain Nicholson, and its attempt to relieve itself of its contractual burdens after performance by plaintiffs destroys the requisite good faith.

In the light of the Portal to Portal Act, the motion for a new trial and the motion to open, vacate or modify the judgments entered on April 25, 1947, will be denied.

9. 29 Code of Federal Regulations 790.15; Burke et al. v. Mesta Mach. Co., D.C.W.D.Pa. 1948, 79 F.Supp. 588.