413 F.2d 658
 19 Wage & Hour Cas. (BN 46
 CLIFTON D. MAYHEW, INC., Appellant,
v.
W. Willard WIRTZ, Secretary of Labor, United States Dept. of
Labor, Appellee.
W. Willard WIRTZ, Secretary of Labor, United States Dept. of
Labor, Appellant,
v.
CLIFTON D. MAYHEW, INC., Appellee.
 Nos. 13015, 13016.
 United States Court of Appeals Fourth Circuit.
 Argued March 7, 1969.
Decided July 3, 1969.
 
 Philip F. Herrick, Washington, D.C., for Clifton D. Mayhew, Inc.
 Donald S. Shire, Atty., Dept. of Labor (Edward D. Friedman, Acting Solicitor of Labor, Bessie Margolin, Associate Solicitor, Sylvia S. Ellison, Chief Trial Atty., and Robert E. Nagle, Atty., Dept. of Labor, on brief) for W. Willard Wirtz.
 Before HAYNSWORTH, Chief Judge, and BRYAN and CRAVEN, Circuit Judges.
 CRAVEN, Circuit Judge:
 
 
 1
 This action was brought by the Secretary under Section 17 of the Fair Labor Standards Act of 1938, as amended,[1] to enjoin Mayhew, Inc. from violating overtime provisions of the Act and to recover unpaid overtime compensation said to be due under Section 7 of the Act. Mayhew pleaded in exoneration Section 10 of the Portal-to-Portal Act,[2] which affords a complete defense if an employer proves 'that the act or omission complained of was in good faith conformity with and in reliance on any written administrative * * * interpretation' of the Wage and Hour Administrator. After discovery both parties moved for summary judgment which was granted for the Secretary. Mayhew appeals maintaining (1) that it showed good faith reliance on the Administrator's Interpretive Bulletin 776 and that, therefore, the district court erred in ruling against it and (2), in the alternative, that there was a triable issue of fact as to its good faith. The Secretary cross-appeals contending that the district court erred in refusing to award interest on the accrued wages found to be owed to Mayhew's employees. We affirm the decision of the district court.
 
 
 2
 Relevant to Mayhew's good faith defense is its past experience with the Wage and Hour Division. Mayhew is a painting subcontractor, whose work consists almost entirely of painting apartment houses, hospitals, Hotels, barracks, swimming pools, new construction, and the like. In January and February of 1961 Mayhew was inspected by the Wage and Hour Division. At that time defendant's president, Clifton D. Mayhew, retained John B. Kneipple, an attorney specializing in labor law, who handled the ensuing negotiations with the Secretary's Investigation Supervisor. At issue in those negotiations was the extent to which defendant's operation was covered by the Act. Correspondence between Kneipple and the Investigation Supervisor indicate that Mayhew at that time relied heavily on Interpretive Bulletin 776, the Administrator's interpretation of the Act's coverage of the construction industry.
 
 
 3
 On April 24, 1961 Kneipple wrote a letter to the Wage and Hour Division, sending a copy to Mayhew. Portions of this letter, set out below, clearly indicate an awareness of legislation then before Congress which on May 5, 1961, became the 1961 Amendments to the Fair Labor Standards Act:
 
 
 4
 . . . I have just received a copy of the bill (H.R.3935) which was adopted by the Senate on April 20, 1961. It amends Section 3 and defines the expressing 'enterprise engaged in * * * the production of goods for commerce' to include 'any such enterprise which is engaged in the business of construction or reconstruction, or both, if the annual gross volume from such enterprise is not less than $350,000.' * * * Should this particular amendment be adopted, its legislative history may shed some light as to the views of Congress concerning the applicability of the Act to construction at the present time. It is our impression that H.R. 3935, which, incidentally, is supported by the Administration, is intended to broaden rather than reduce coverage . . .
 
 
 5
 I intend to follow this legislation closely and find out what I can about what is intended.
 
 
 6
 Kneipple was retained by Mayhew on a case-by-case basis and when, after he and the Investigation Supervisor could not agree on a settlement of the 1961 case and it was referred to the Regional Office where no further action was taken, he terminated his formal services. However, Kneipple and Mayhew did, after the 1961 Amendments were enacted, have occasion to discuss their effect on defendant's operation.
 
 
 7
 The complaint in the instant litigation was filed April 21, 1967, wherein it was alleged that defendant's operation was covered by Section 3(s)(4) of the Act,[3] which is a part of the 1961 'enterprise' amendments to the Act and read substantially as quoted and emphasized in Kneipple's April 24, 1961 letter to the Wage and Hour Division. Mayhew did not contend that its operation was not in fact within the Act's coverage. As previously stated the defense was, rather, the good faith defense provided by Section 10 of the Portal-to-Portal Act. The administrative interpretation relied on by defendant is the Administrator's Interpretive Bulletin 776, Subpart B. 29 C.F.R. 776.22 et seq. Defendant places particular emphasis on the following language from that Bulletin:
 
 
 8
 . . . (The) erection, maintenance or repair of dwellings, apartments, hotels, churches and schools are not covered projects. Similarly the construction of a separate, wholly new, factory building, not improvement of an existing covered production plant, is not covered. Interpretive Bulletin 776.26, 29 C.F.R. 776.26.
 
 
 9
 Construction of a new factory building, even though its use for interstate production upon completion may be contemplated, will not ordinarily be considered covered. Interpretive Bulletin 776.27(c)(1), 29 C.F.R. 776.27.
 
 
 10
 If Mayhew relied in good faith on Bulletin 776 and did not believe that its operation came within the Act's coverage there is clearly no liability under the Act. The statute does not specify whether the good faith standard in Section 10 of the Portal-to-Portal Act is subjective or objective. The courts have interpreted the statute both ways.[4] However, the legislative history of Section 10 demonstrates, we think, that Congress intended the standard to be an objective one, and we so hold.
 
 
 11
 Representative Walter, one of the Managers of the bill in the House and a member of the Conference Committee, commented:
 
 
 12
 The defense of good faith is intended to apply only where an employer innocently and to his detriment, followed the law as it was laid down to him by government agencies, without notice that such interpretations were claimed to be erroneous or invalid. It is not intended that this defense shall apply where an employer had knowledge of conflicting rules and chose to act in accordance with the one most favorable to him. Vol. 93, Part 4, Cong. Rec. 4390.
 
 
 13
 On signing the Portal-to-Portal Act, President Truman submitted a message to Congress in which he stated:
 
 
 14
 I wish also to refer to the so-called 'good faith' provisions of Sections 9 and 10 of the Act. It has been said that they make each employer his own judge of whether or not he has been guilty of a violation. It seems to me that this view fails to take into account the safeguards which are contained in these Sections. The employer must meet an objective test of actual conformity with an administrative ruling or policy. If the employer avails himself of the defense under these Sections, he must bear the burden of proof. U.S.Code Congressional Service, 80th Congress, First Session, 1947, p. 1827.
 
 
 15
 Applying this standard to the facts of this case, we think the undisputed facts establish that Mayhew could not after enactment of the 1961 'enterprise' Amendments have entertained a good faith belief in the continuing vitality of Interpretative Bulletin 776 in its application to a construction business grossing more than $350,000 per annum. The letter of defendant's attorney to the Investigation Supervisor recognized the Congressional intent to broaden the Act's coverage. The extended coverage to the construction industry in particular was dramatically apparent. The piecemeal coverage of construction employees prior to 1961 is illustrated by the language of the Interpretative Bulletin upon which defendant relies for his defense:
 
 
 16
 The provisions of the Act expressly make its application dependent on the character of an employee's activities, that is, on whether he is engaged 'in commerce' or in the 'production of goods for commerce including any closely related process or occupation directly essential to such production.' Interpretative Bulletin 776.22(a), 29 C.F.R. 776.22.
 
 
 17
 Unless construction work is physically or functionally integrated or closely identified with an existing covered facility it is not regarded as covered construction because it is not closely enough related to or integrated with the production of goods for commerce . . .. Interpretative Bulletin 776.26, 29 C.F.R. 776.26.
 
 
 18
 The Senate Report on the 1961 Amendments estimated that the enterprise provisions would extend the Act's coverage to approximately 1 million additional employees in the construction industry.[5] '(Prior) to 1961 the Fair Labor Standards Act applied only to those employees who themselves engaged in commerce or in the production of goods for commerce.'[6] Under the earlier law employees working in the same enterprise could be treated differently so that while one employee was covered, another-- working side by side-- was not.[7] 'By the provisions of the 1961 Amendments, all employees of various enterprises whose activities related to the movement of goods in commerce . . . became subject to the Act . . ..'[8] The commerce test for bringing a construction business within the terms of the Act after 1961 was based on the activities of the entire enterprise and not on any construction project or on the activity of any particular employee. See generally Childress v. Earl Whitley Enterprises, Inc., 388 F.2d 742 (4th Cir. 1968).
 
 
 19
 Interestingly, the minority report of Senators Goldwater and Dirksen on the proposed 1961 Amendments noted that 'the bill is extraordinarily far-reaching in expanding the coverage features of the act. It would cover the following presently noncovered employees: Employees of employers in the construction business who are engaged in erecting, maintaining, or repairing dwellings, apartments, hotels, churches, schools and new factory buildings. It would simply be necessary to show that the enterprise has two or more employees handling goods that had moved in interstate commerce and that it did an annual volume of business of $350,000. It does not take a very large construction business to do an annual volume of $350,000.'[9] The dissenters cited the Administrator's Interpretative Bulletin 776 for authority that at the time of their report such enterprises were not within the Act's coverage. The plain implication was that the exemption would be lost if the bill were enacted.
 
 
 20
 Where an employer, from correspondence and consultation with his attorney, had knowledge of the language of legislation amending the coverage provisions of the Act and of language of an Interpretative Bulletin of the Administrator, and where the two are obviously conflicting, we think he does not objectively act in 'good faith' when he chooses to 'believe' the one exempting him from coverage. The law had been changed and the employer knew it. 'If he did not know, it was because he did not look, or looking, did not see, or want to see what was so plainly there.' Mitchell v. Raines, 238 F.2d 186, 188 (5th Cir. 1956). On the pleadings, answers to interrogatories, admissions on file, and affidavits the district court correctly decided that defendant did not act in good faith reliance on Interpretative Bulletin 776. Since there was no genuine issue as to any material fact, summary judgment was properly entered for the Secretary.
 
 
 21
 Finally, we do not accept the Secretary's contention that the district court erred in not including in its order provision for prejudgment interest on the wages found to be owing defendant's employees. A suit for an injunction brought by the Secretary under Section 17 of the Act is essentially equitable in nature, Wirtz v. Jones, 340 F.2d 901 (5th Cir. 1965); Wirtz v. Robert E. Bob Adair, Inc., 224 F.Supp. 750 (D.C.W.D.Ark.1963); Wirtz v. Alapaha Yellow Pine Products, Inc., 217 F.Supp. 465 (D.C.M.D.Ga. 1963), in which the trial court has broad discretion to fashion its decree according to the circumstances of each case. We think that the district court did not abuse its discretion in refusing to award pre-judgment interest.
 
 
 22
 Accordingly the decision and order of the district court is
 
 
 23
 Affirmed.
 
 
 
 [1]
 29 U.S.C.A 201 et seq
 
 
 [2]
 29 U.S.C.A. 251 et seq
 
 
 [3]
 29 U.S.C.A. 203(s)(4) was amended by the Fair Labor Standards Amendments of 1966, P.L. 89-601, effective Feb. 1, 1967. Defendant's operation is now covered by 29 U.S.C.A. 203(s)(3)
 
 
 [4]
 Compare Addison v. Huron Stevedoring Corp., 204 F.2d 88, 93 (2d Cir. 1952), cert. denied, 346 U.S. 877, 74 S.Ct. 120, 98 L.Ed. 384 (1953), (subjective); Van Aalten v. Hurley, 176 F.Supp. 851, 856 (S.D.N.Y.), (subjective), with Kam Koon Wan v. E.E. Black, Ltd., 188 F.2d 558 (9th Cir. 1951), (objective); Campbell v. Jones and Laughlin Steel Corp., 96 F.Supp. 189, 194 (W.D.Pa.1951), (objective); Burke v. Mesta Mach. Co., 79 F.Supp. 588, 611 (W.D.Pa.1948), (objective). See also Martinez v. Phillips Petroleum Co., 283 F.Supp. 514 (E.D.Idaho 1968)
 
 
 [5]
 Senate Report No. 145, April 10, 1961, 87th Congress, First Session, 2 U.S.Cong. and Adm.News (87th Cong., 1st Sess., 1961) p. 1650
 
 
 [6]
 State of Maryland v. Wirtz, 269 F.Supp. 826, 835 (D.Md.1967), aff'd 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968)
 
 
 [7]
 Senate Report No. 145, supra note 5 at 1651
 
 
 [8]
 State of Maryland v. Wirtz, supra note 6
 
 
 [9]
 Senate Report No. 145, supra note 5 at 1695