Paul G. **EDEN**

v.

**AMOCO OIL COMPANY, INC.**

**Civ. No. PN-86-3421.**

United States District Court,
D. Maryland.

July 20, 1990.

Harry C. Storm, Abrams, West & Storm, P.C., Bethesda, Md., for plaintiff.

Ward B. Coe, III, Whiteford, Taylor & Preston, Baltimore, Md., and Thomas. J. Ciechanowski, Amoco Oil Co., Chicago, Ill., for defendant.

## OPINION AND ORDER

NIEMEYER, District Judge.

Paul G. Eden was terminated in November 1986 by Amoco Oil Company as a franchised gasoline station operator when Amoco refused to renew the franchise agreement with Eden. Eden filed suit against Amoco and included a claim that the termination violated the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 *et seq.* (1988). After a two-week trial the jury returned a verdict in favor of Eden, awarding him $104,000 in damages. Because the PMPA provides that the Court is to determine whether plaintiff receives exemplary damages, Eden has filed a motion requesting that judgment include an award for exemplary damages. He also requests that the Court include an award for prejudgment interest. For the reasons given hereafter, the Court will deny both requests.

### I.

The PMPA was enacted to protect motor fuel franchisees " 'from arbitrary and discriminatory terminations or nonrenewals of their franchises.' " *See Darling v. Mobil Oil Corp.*, 864 F.2d 981, 983 (2d Cir.1989) (citation omitted). The Act provides that a prevailing franchisee is entitled to an

award of exemplary damages, "where appropriate," if the franchisor acted in "willful disregard of the requirements of section 2802 or 2803 of this title, or the rights of the franchisee thereunder." 15 U.S.C. § 2805(d)(1)(B). The Act further provides that "[t]he question of whether to award exemplary damages and the amount of any such award shall be determined by the court and not by a jury." 15 U.S.C. § 2805(d)(2). Neither the PMPA nor its legislative history defines the standard to be applied in determining whether a franchisor acted in "willful disregard" of the statutory requirements or the rights of a franchisee.

Amoco contends that when finding that a defendant acted in "willful disregard" of the provisions of the PMPA, the Court should require proof of actual malice, drawing guidance from the law of Maryland on punitive damages. *See H & R Block, Inc. v. Testerman,* 275 Md. 36, 338 A.2d 48 (1975). Actual malice under Maryland law requires a finding of "the performance of an unlawful act, intentionally or wantonly, without legal justification or excuse but with an evil or rancorous motive influenced by hate; the purpose being to deliberately and wilfully injure the plaintiff." *Drug Fair of Maryland, Inc. v. Smith,* 263 Md. 341, 352, 283 A.2d 392 (1971).

Eden, on the other hand, argues that the Court should not look for proof of a bad motive and should not weigh evidence of good faith to negate willfulness. Eden urges the Court to adopt the definition of "willful" as that term has been defined in cases which involve "willful adulteration, mislabeling or misbranding of motor fuels or other trademark violations" under 15 U.S.C. § 2802(c)(10). *See, e.g., L.C. Williams Oil Co. v. Exxon Corp.,* 627 F.Supp. 864 (M.D.N.C.1985); *Haynes v. Exxon Co., U.S.A.,* 512 F.Supp. 543 (E.D. Tenn.1981).

In *L.C. Williams Oil Co.,* the court held that "the 'willful' requirement of 15 U.S.C. § 2802(c)(10) contemplates 'a conscious, intentional, deliberate and voluntary act, and that the provision does not require "proof

of bad motive, nor does evidence of good faith negate the willfulness of an act covered by said provision." ' " 627 F.Supp. at 870 (citation omitted). More recently, the Ninth Circuit defined a willful act under 15 U.S.C. § 2802(c)(10) as a "voluntary action, done either with an intentional disregard of, or plain indifference to, the requirements of the franchise agreement." *Retsieg Corp. v. ARCO Petroleum Products Co.,* 870 F.2d 1495, 1498 (9th Cir.1989).

The formulation in *Retsieg* is akin to the standard for willfulness established by the Supreme Court in cases brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34 (1982). In *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Court held that an ADEA violation is "willful" if the employer knew its conduct was prohibited or if the employer acted with reckless disregard for the matter of whether its conduct was prohibited. *Id.* at 125–28, 105 S.Ct. at 623–25. The Supreme Court also has applied the *Thurston* standard of willfulness to explain the statute of limitations for willful violations of the Fair Labor Standards Act. In *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Court noted:

> In common usage the word "willful" is considered synonymous with such words as "voluntary," "deliberate," and "intentional." The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent. The standard of willfulness that was adopted in *Thurston*—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—is surely a fair reading of the plain language of the [FLSA].

*Id.* at 133, 108 S.Ct. at 1681 (citation omitted).

■ In light of the discussions in *Thurston* and *McLaughlin,* the Court concludes that the formulations of willfulness given in those cases should be applied to deter-

mine whether exemplary damages should be awarded to a prevailing franchisee under the PMPA. Thus, willfulness as used in the PMPA describes conduct that is pursued with a consciousness of wrongdoing or with a considered disregard to whether it violates the Act. It requires more than deliberate conduct that, in fact, violates the Act, so that an aspect of guilty knowledge or imputed guilty knowledge is required. As used in the Act, however, willfulness does not encompass a requirement of showing maliciousness in motive. *See Thurston,* 469 U.S. at 126 n. 19, 105 S.Ct. at 624 n. 19. Thus, a franchisor will be found to have acted with "willful disregard" of the statutory requirements or the rights of a franchisee if the franchisor either knew its conduct was prohibited by the PMPA or if the franchisor acted with plain indifference to its prohibitions.

This conclusion is supported by analogous decisions of the Fourth Circuit defining willfulness in other contexts. For example, the Fourth Circuit has indicated that *Thurston* does not mandate a finding of "willfulness" in ADEA cases simply because an employer's explanations for its actions were found to be mere pretexts for conduct which violated the statute. *See, e.g., Herold v. Hajoca,* 864 F.2d 317, 323–24 (4th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989); *Gilliam v. Armtex, Inc.,* 820 F.2d 1387, 1389–90 (4th Cir.1987). In both *Hajoca* and *Gilliam,* the Fourth Circuit upheld a motion for judgment notwithstanding the verdict, overturning a jury award of liquidated damages, because "there was no evidence that 'the employer acted in bad faith or with knowledge that its action was so lacking in justification as to warrant a jury's characterization of its conduct as willful.' " *Hajoca,* 864 F.2d at 323 (quoting *Gilliam,* 820 F.2d at 1390).

■ Eden contends that the facts in this case justify an award of exemplary damages because Amoco demonstrated its knowledge of prohibited conduct by advancing reasons for the termination of the franchise relationship which were pretextual. Eden suggests that Amoco had already decided in March 1986, about three months before he was terminated, to abandon the station. He argues that Amoco wanted to close the station because of a general dissatisfaction with its relationship with him and his family and that it accordingly seized upon minor violations of the franchise agreement, upon which Amoco otherwise would not have relied, to rationalize terminating the franchise relationship in accordance with the PMPA. Because the alleged minor infractions were but a pretext for the true motivations of Amoco, Eden contends that Amoco's disregard of the requirements of the PMPA was willful, as that term is used in the statute.

Amoco points out that in March 1986 company officials had merely recommended abandoning the Eden gas station site and that this recommendation had to be approved by Amoco's capital investment manager who did not issue his approval until late June 1986. By that time, another arm of Amoco had already decided not to renew the franchise agreement with Eden because of a series of violations of the agreement by Eden. Such violations included Eden's closing the station early, failing to meet prescribed levels of appearance and cleanliness, and failing to devote sufficient time to the franchise. Eden's station suffered from declining sales during the course of his relationship with Amoco, and Amoco contends that this decline resulted directly from the violations. Amoco contends that the actual decision not to renew was made in June 1986 after Amoco officials reviewed Eden's file as part of a standard procedure that was pursued during the months before a renewal date which, in this case, was upcoming in November 1986. The review was conducted then because the PMPA requires 90 days prior notice of nonrenewal. The review revealed the history of the relationship between Eden, his family and Amoco and the various contractual violations, and it included a presentation of the file to Amoco's in-house counsel for advice. Following receipt of that advice Amoco decided to terminate the franchise arrangement by not renewing it at the time for renewal in November 1986. Eden was advised of this decision on June

26, 1986. Although the capital investment manager thereafter approved the recommendation to abandon the site, abandonment was not pursued by Amoco because of its earlier decision to terminate for cause.

■ Although it cannot be determined what actually prompted the decision by Amoco not to renew the franchise, sufficient evidence was presented to conclude that Amoco believed in good faith that it was justified in terminating Eden because of franchise violations. It is noteworthy that before acting, Amoco sought and obtained the advice of legal counsel. Seeking a lawyer's advice does not, of course, immunize one's actions. But it is evidence to be considered in determining whether a decision was made in willful disregard of statutory obligations. *See Thurston*, 469 U.S. at 129, 105 S.Ct. at 625.

Based on all of the evidence, the Court finds that exemplary damages are not justified in this case. While the jury did find that Amoco had violated the PMPA by not renewing Eden's franchise, the mere fact that a violation was found to have occurred does not mandate a finding that the violation was the result of a willful disregard of the Act.

## II.

■ Eden also requests that the Court add to the jury verdict and include as part of the judgment a sum for prejudgment interest. The PMPA does not specifically provide for prejudgment interest, but Eden relies on the decision in *Midwest Petroleum Co. v. American Petrofina Marketing, Inc.*, 644 F.Supp. 1067, 1070 (E.D.Mo.1986), in which the court, trying a PMPA case without a jury, determined as a matter of discretion to include prejudgment interest at the rate of 9% per annum as part of the damages awarded. Amoco argues on the other hand that prejudgment interest should not be awarded because Eden did not request it from the jury, which was the fact finder in this case. Amoco relies on *Kolb v. Goldring, Inc.*, 694 F.2d 869, 875 (1st Cir.1982), where the plaintiff was barred from seeking prejudgment interest

in a case for age discrimination because the plaintiff did not first request it from the jury.

Prejudgment interest is an aspect of damage which is awarded to compensate a plaintiff for the loss of use of money. As the Supreme Court observed in *West Virginia v. United States*, 479 U.S. 305, 310–11 n. 2, 107 S.Ct. 702, 710 n. 2, 93 L.Ed.2d 639 (1987), "[p]rejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."

Because prejudgment interest is an element of the plaintiff's damages, the decision to include it as part of an award properly lies with the finder of fact. As noted by Eden there are cases which hold that the court has discretion to award prejudgment interest. *See, e.g., Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1401 (4th Cir.1990) (bench trial with advisory jury panel); *Vance v. American Hawaii Cruises, Inc.*, 789 F.2d 790, 794 (9th Cir. 1986) (bench trial); *Cline v. Roadway Express, Inc.*, 689 F.2d 481, 489 (4th Cir.1982) (same); *Clifton D. Mayhew, Inc. v. Wirtz*, 413 F.2d 658 (4th Cir.1969) (suit for injunctive relief); *Midwest Petroleum Co. v. American Petrofina Marketing, Inc.*, 644 F.Supp. 1067, 1070 (E.D.Mo.1986) (bench trial). In each of these cases the court acted as the finder of fact. When a court assumes that role, it is entirely appropriate that it exercise its discretion in deciding whether to award prejudgment interest.

The notion that prejudgment interest is discretionary with the fact finder, however, does not authorize a court, once a jury has determined damages, to add to those damages a sum for prejudgment interest. The allowance of prejudgment interest would have been discretionary with the jury had it been presented to the jury for consideration and had Eden requested the Court so to instruct the jury. No such claim was presented to the jury and no such request for instruction was made by Eden. It is not now within the province of the Court to add to the verdict that which was within

the province of the jury. The request to have the Court add to the verdict an amount for prejudgment interest will therefore be denied.

Accordingly, for the reasons given in this Opinion, it is hereby ORDERED this 20th day of July, 1990, that:

1. The motion of Eden for exemplary damages under the PMPA is denied.

2. The motion of Eden for the inclusion of prejudgment interest in the judgment is denied.

3. The Clerk is directed to enter judgment in favor of Paul G. Eden and against Amoco Oil Company, Inc. in the amount of $104,000.