William D. COVEY, Plaintiff,

v.

UNION OIL COMPANY OF CALIFOR-
NIA, a California corporation, dba
Unocal, Defendant.

Civ. No. 92–6252–TC.

United States District Court,
D. Oregon.

May 13, 1993.

David S. Shannon, Thomas P. Walsh, Shannon, Johnson & Bailey, P.C., Portland, OR, for plaintiff.

Michael D. Williams, Williams, Fredrickson, & Stark, P.C., Portland, OR, for defendant.

## OPINION AND ORDER

COFFIN, Magistrate Judge:

Before the court are plaintiff's motions for attorney and expert fees (# 56) and for exemplary damages (# 59). The parties have stipulated that the amount of reasonable attorney and expert fees in this case is $66,487. Plaintiff requests $500,000 in exemplary damages, while defendant opposes any award of punitives under the circumstances of this case.

### Background

Plaintiff William Covey was a franchisee of a Unocal service station in Florence, Oregon. Defendant Unocal decided prior to March of 1990 to close down approximately 150 of its stations in the Oregon–Washington region. On March 28, 1990, Unocal notified Covey that his franchise relationship with Unocal would not be renewed when his lease agreement expired on July 31, 1990. In accordance with the requirement of the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 *et seq.*, Unocal offered to sell the premises to Covey at fair market value. Although Covey accepted the offer, the sale was delayed for over 2½ years because of soil contamination problems at the site which Unocal was required by law to remedy. At the time it made the offer to Covey, Unocal had misinformed him that the clean-up would take only 60 days. Because of the delay, Covey was unable to continue earning a livelihood by operating the station as he had planned had the sale been consummated in

more timely fashion. Ultimately, Covey filed suit in which he sought recovery on three claims: 1) that Unocal breached the PMPA bona fide offer requirement; 2) that Unocal was negligent in failing to close the sale and turn over the property to plaintiff in a timely fashion; and 3) that Unocal breached the requirement under state law (ORS 650.245) that it deal with Covey in good faith during the course of their franchise relationship.

Upon trial on these claims, the jury found for plaintiff on all three claims, and awarded $215,000 in compensatory damages. Pursuant to 15 U.S.C. § 2805(d)(1)(C), plaintiff is entitled to recover reasonable attorney and expert witness fees in this matter and I accordingly award plaintiff the stipulated amount of $66,487. Pursuant to § 2805(d)(1)(B) and (d)(2), the court may award exemplary, or punitive, damages if the court finds that Unocal's conduct was "in willful disregard of the requirements" of the PMPA.

During the course of its deliberations, the jury presented a note which, in essence, asked whether it had the option to award punitive damages (Court Exh. 1). As the question of punitives under PMPA is not for the jury and as none of the other claims involved a prayer for punitives, the parties had not discussed the issue of such damages in closing argument nor had any instructions been given on the subject. With the stipulation of the paries, and based upon the express understanding that any punitives "awarded" by the jury would not be binding, the jury was informed that it could make a recommendation regarding punitives if it is so desired (Court Exh. 2). The jury thereupon returned its verdict awarding $215,000 in compensatory damages and recommending $400,000 in punitive damages.

### Legal Analysis

Given that the jury did not have the benefit of any instructions from the court nor any input from the attorneys on the issue of punitives or the related issue of whether Unocal's conduct was in "willful disregard" of the requirement of PMPA, I assign no weight to the jury's recommendation. I do consider, however, that the jury in reaching

its verdict in favor of plaintiff necessarily rejected Unocal's defense that it acted in good faith towards Covey and acted reasonably in the manner in which it addressed the soil remediation problem on the site. In short, the jury found that Unocal unreasonably delayed the clean-up efforts at the station and failed to fulfill its obligations to Covey to, in essence, allow him to earn a livelihood from the premises.

As far as the research of the parties and the court has disclosed, the legal issue presented by plaintiff's PMPA claim herein is one of first impression. To elaborate, if a franchisor exercises its right not to renew a franchise relationship, it must provide the franchisee with "a bona fide offer to sell, transfer, or assign to the franchisee such franchisor's interests in such premises." 15 U.S.C. § 2802(b)(3)(D)(iii)(I). The purpose of this requirement is to allow the franchisee to continue to operate and earn a livelihood from the station. *Ellis v. Mobil and Unocal*, 969 F.2d 784, 788 (9th Cir.1992).

Interestingly, once the franchisor complies with its obligations to provide a "bona fide offer" to the franchisee, Congress created no PMPA remedy should the franchisor subsequently breach any resulting contract with the franchisee. Presumably, Congress felt that a simple action for breach of contract would suffice to protect the franchisee's interest in that regard.

As a rule, PMPA claims involving the question of whether the franchisor complied with the "bona fide offer" requirement concern whether the offer to sell was for market value. *See, e.g., Ellis, supra.* Here, plaintiff agrees that the offer made by Unocal was for fair market value (had Unocal effected a timely sale). The issue presented is instead whether the time taken to consummate the sale was of such length that it violated the bona fide offer requirement.

The parties cited no cases to the court which dealt with this issue. Plaintiff's theory of the case initially was that, even if Unocal's offer to sell the property to him was bona fide when made in March of 1990, defendant's subsequent failure to timely perform its obligations pursuant to the resulting con-

tract could thereafter relate back to make the offer less than bona fide. This position in essence would have created a breach of contract remedy under PMPA. I did not accept this reasoning, and ruled at trial that the "bona fide offer" issue must be focused on the time the offer was made by Unocal and whether it was bona fide *when made.*

Accordingly, the jury was instructed in pertinent part as follows on the PMPA claim:

### Plaintiff's First Claim

Plaintiff has alleged that defendant was a franchisor for the purposes of the Petroleum Marketing Practice Act and plaintiff was a franchisee at the station in Florence, Oregon. In March 1990, in accordance with the Petroleum Marketing Practice Act, defendant notified plaintiff that its franchise at the Florence station was not being renewed. With the written notice defendant offered to sell the property to plaintiff for $156,000, if the building remained, and $87,000, if the building was removed.

Under federal law, namely the Petroleum Marketing Practices Act, Unocal was required, when it decided not to renew its franchise agreement with plaintiff, to make a bona fide offer to sell Unocal's interest in the Florence service station to plaintiff. There is no dispute in this case that plaintiff was a franchisee under the Petroleum Marketing Practices Act and thus entitled to receive such a bona fide offer from Unocal to purchase the station once Unocal decided to terminate its franchise.

Plaintiff's claim under federal law is that Unocal did not provide him with a bona fide offer as required by PMPA. Plaintiff contends that the offer was not bona fide in that it did not provide him with a reasonable possibility of continuing a service station operation or to earn a livelihood from the property.

While plaintiff agrees that Unocal's purchase price for the property was a fair market price for the property, and thus bona fide in that respect, he nonetheless contends that at the time the offer was made Unocal knew or should have known it was not prepared to clean up the proper-

ty under applicable environmental laws in a reasonably timely fashion and that this clean-up time was of such unreasonable length that it denied plaintiff the reasonable possibility of continuing the service station operation or to earn a livelihood from the property. Plaintiff contends that because of this unreasonable delay factor Unocal's offer to sell the property to him was not a bona fide offer.

Defendant Unocal has the burden of proof in showing that the offer to sell was bona fide at the time it was made. In determining whether the offer was bona fide or not, it is for you to decide:

a) whether the length of time taken to clean up the property, which was a condition of the offer to sell, was unreasonable in light of all the circumstances; and, if so,

b) whether defendant, at the time the offer was made, knew or should have known it was not prepared to clean up the property and close escrow in a reasonably timely fashion.

Put another way, Unocal contends that it acted reasonably in its clean-up of the service station property, that it performed the clean-up in a reasonable time frame under the circumstances, and that at the time Unocal made its offer to sell the property to plaintiff it was not aware nor should it reasonably have been aware of the extent of the contamination problem and the length of time it would take to remedy that problem. Unocal thus contends its offer was bona fide. As previously stated, Unocal has the burden of proof by a preponderance of evidence on this issue.

Turning now to the evidence introduced at trial as well as the memoranda submitted to the court by the parties on plaintiff's motion for exemplary damages, plaintiff has established that Unocal chose not to renew approximately 150 franchise relationships in Oregon and Washington beginning in March, 1990. Many of these stations had soil contamination problems which, by state and federal law, needed to be remediated. Plaintiff has also established that Unocal failed to allocate sufficient resources to remediate the contaminated soil at each site in a timely

enough fashion so that those franchisees, including plaintiff, who exercised their option to accept Unocal's offer to sell could continue operations without unreasonable delay, and misled plaintiff as to the time it would take to clean up his site. The jury found from the evidence presented at trial that Unocal knew or reasonably should have known, at the time it made its offer to sell to Covey, that it could not consummate the sale in a reasonably timely fashion. The jury thus found that the offer was not bona fide, notwithstanding the otherwise fair market value of the selling price.

◼ I now turn to the issue of "willfulness". In order to recover exemplary damages, plaintiff must establish that defendant was in willful disregard of the requirements of PMPA in its conduct towards him under the circumstances of this case.

In *Eden v. Amoco Oil Co.*, 741 F.Supp. 1192, 1195 (D.Md.1990), the court fashioned the following definition of "willful disregard" as used in PMPA:

> [W]illfulness as used in the PMPA describes conduct that is pursued with a consciousness of wrongdoing or with a considered disregard of whether it violates the Act. It requires more than deliberate conduct that, in fact, violates the Act, so that an aspect of guilty knowledge or imputed guilty knowledge is required. As used in the Act, however, wilfulness does not encompass a requirement of showing maliciousness in motive.

*See also TWA v. Thurston*, 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985) (analogous definition of "willfulness" as element of punitive damages in age discrimination case).

As noted, this is a case of first impression. There is certainly no evidence in the record from which the court could conclude that Unocal knew that the time factor involved in the clean-up operation rendered its offer to sell less than bona fide, or acted in conscious disregard of the PMPA requirement to make a bona fide offer. To the contrary, the record evidences that Unocal at least attempted to comply with PMPA by making an offer to sell the property to Covey at fair market value. Unocal had a right to make a business decision not to renew most of its franchises in the Northwest, and further had an obligation under applicable environmental laws to remediate soil contamination at these sites. I also note that neither party addressed the issue of the length of time needed to close the sale in the written offer that was made by Unocal and ultimately accepted by Covey. Given the verdict in this case, it is probably safe to predict that in future cases this contingency will be expressly dealt with as part of any offer.[1] I am unable to say, under the circumstances herein, that Unocal should have or did anticipate that procrastination in its clean-up efforts would cause it to run afoul of PMPA. Now it is on notice, as well as other franchisors. This bite of the apple, however, does not merit the awarding of exemplary damages.

### ORDER

The Clerk is directed to enter judgment in favor of plaintiff for $215,000 in compensatory damages and $66,487 in attorney and expert fees, for a total of $281,487. Plaintiff's motion for exemplary damages is denied.

---

**1.** A franchisor might conceivably add the cost of expedited clean-up to the selling price or lower the price to reflect longer clean-up time. Just as in this case the selling price was adjustable depending upon whether the building was left on the premises or removed, so it would seem the market price is affected by the presence of contaminated soil and related clean-up costs. *See, e.g., Tobias v. Shell Oil Co.*, 782 F.2d 1172 (9th Cir.1986). The problem with Unocal's offer in this case is that the market value of the property was significantly affected by the 2½ year delay, no adjustments were made in the offer to reflect this delay, and the jury found that Unocal knew or reasonably should have known that it was not prepared to close the deal in timely fashion. There was also evidence that Unocal repeatedly misinformed plaintiff as to the time it would take to clean the site.

Your Honor,

Are we restricted in the damages we might award to lost income and/or loss of business value?

For instance, may we assess "punitive damages" (or some other appropriate equivalent term of art) or damages based on pain & suffering.

W. Cadbury
Freeman

1262

THERE ARE NO OTHER DAMAGES IN THE CASE FOR YOU TO ASSESS OTHER THAN THOSE I HAVE INSTRUCTED YOU ON.

YOU MAY, HOWEVER, IF YOU UNANIMOUSLY AGREE IT IS APPROPRIATE, RECOMMEND AN AMOUNT TO THE COURT WHICH, IN YOUR OPINION, SHOULD BE ASSESSED AS "PUNITIVE" DAMAGES. ANY SUCH AMOUNT YOU RECOMMEND WOULD NOT BE BINDING ON THE COURT, BUT COULD BE CONSIDERED BY THE COURT ON THAT ISSUE.

Judge Coffin

EXHIBIT #2