**L.M.P. SERVICE, INC.**

v.

**SHELL OIL COMPANY, et al.**

**Civil Action No. DKC 99–771.**

United States District Court,
D. Maryland.

Aug. 17, 2000.

---

James L. Parsons, Jr., Abrams, West, Storm & Diamond, Bethesda, MD, Harry C. Storm, Abrams, West & Storm, P.C., Bethesda, MD, for Plaintiff.

Richard M. Barnes, Goodell, DeVries, Leech & Gray, Baltimore, MD, Patricia McHugh Lambert, Hodes Ulman Pessin & Katz, P.A., Towson, MD, Ian Gallacher, Goodell, DeVries, Leech & Gray, Baltimore, MD, Thomas J. Gisriel, Hodes, Ulman, Pessin & Katz, Towson, MD, James L. Parsons, Jr., Abrams, West, Storm & Diamond, Bethesda, MD, Harry C. Storm, Abrams, West & Storm, P.C., Bethesda, MD, for Defendants.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Pending before the court are Defendants' Motion for Summary Judgment on the issue of remedies and Plaintiff's Motion to Strike Exhibit A. The issues are fully briefed, and a hearing was held before this court on June 6, 2000. For the reasons set forth more fully below, the court will GRANT Defendants' motion for summary judgment.

*Background*

In an order dated February 23, 2000, this court found that Defendants Shell Oil Co. and Motiva Enterprises violated the Petroleum Marketing Practice Act (PMPA), 15 U.S.C. § 2801, *et seq.* The court set forth relevant facts in the accompanying memorandum opinion on that date. Congress enacted the PMPA to protect franchisees "from arbitrary or discriminatory termination or non-renewal of their franchises." S.REP. No. 95–731, at 15 (1978), *reprinted in* 1978 U.S.C.C.A.N. 873, 874. In this case, Defendants provided notice of nonrenewal to Plaintiff, according to requirements of § 2804, stating its ground for action to be its determination to sell the premises. Defendants then presented an offer to Plaintiff in an attempt to satisfy the PMPA duty to present "a right of first refusal ... of an offer, made by another, to purchase such franchisor's interest in such premises." 15 U.S.C. 2802(b)(3)(D)(iii). However, this court found that Defendants failed to satisfy the statute because the offer to sell the premises was contingent upon renewing the franchise in a supply agreement.

■ At issue is the proper remedy for such a violation of the PMPA. Plaintiff argues that the proper remedy is the right to buy the property at the $1.2 million price offered under the improper offer of a right of first refusal, but unencumbered by a supply agreement. In the alternative, Plaintiff seeks compensatory damages. Moreover, Plaintiff seeks the award of punitive damages for the violation of the PMPA and attorney fees. Defendants instead seek for the court to simply disallow the improper nonrenewal of the franchise.

*Equitable Relief and Compensatory Damages*

The PMPA provides that, in the case of violation of the renewal provisions,

the court shall grant such equitable relief as the court determines is necessary to remedy the effects of any failure to comply with the requirements of section 2802 or 2803 of this title, including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief.

15 U.S.C. § 2805(b)(1). Plaintiff seeks an order that Defendants offer to sell the property to Plaintiff at the price of $1.2 million. *See Florham Park Chevron, Inc. v. Chevron USA*, 680 F.Supp. 159 (D.N.J. 1988) (finding that the PMPA empowers the court to grant equitable relief ordering the right of first refusal, but denying it in that case). The court finds that such drastic equitable relief is unnecessary to remedy the effects of the improper nonrenewal. Plaintiff does not have an independent

statutory right to purchase the premises. The PMPA in effect restricts Defendants' ability to sell the property to anyone other than Plaintiff. This lawsuit has indeed prevented Defendants from selling the property at all at this time. No further equitable relief is necessary to prevent that harm to Plaintiff.

The most common remedy for nonrenewal violations under the PMPA appears to be an order disallowing the nonrenewal and compelling the defendant to continue the franchise subject to the defendant's right to properly terminate the franchise. *See, e.g., Clark v. Mobil Oil Corp.,* 496 F.Supp. 132, 136 (E.D.Mo.1980). This is the remedy which Defendants seek in this case and the one the court finds most appropriate. The court found in its earlier order that the presentation of a right of first refusal contingent upon a renewal of the franchise relationship is not a proper ground for nonrenewal. Therefore, the court will compel Defendants to continue its franchise relationship with Plaintiff.[1]

Ordinarily, upon expiration of a franchise agreement, the PMPA directs the franchisor to propose "changes or additions [which] are the result of determinations made by the franchisor in good faith and in the normal course of business." 15 U.S.C. § 2802(b)(3)(A); *see also Valentine v. Mobil Oil Corp.,* 789 F.2d 1388, 1391 (9th Cir.1986) ("Any changes must be proposed by the franchisor on the basis of determinations made in good faith, in the normal course of business and not for the purpose of preventing renewal of the franchise relationship."). Because Defendants attempted to sell the property, no such negotiations took place here. In order to minimize the impact of the violation and the filing of this lawsuit on Plaintiff, De-

fendants will be limited at this time in their ability to negotiate the terms of the renewal. Accordingly, the franchise relationship between Plaintiff and Defendants will be renewed and remain in effect for a five-year term, concluding March 31, 2004, without prejudice to the rights of Defendants with respect to the termination of franchises under 15 U.S.C. § 2802. The terms of the renewed franchise agreement will be identical to the previous one, with the exception of monthly rent. The court finds it would be unfair to limit Defendants for the entire five-year term to the rent being charged in March 1999. Currently the monthly rent is at a rate set forth in this court's preliminary injunction order of March 26, 1999, and it will remain at that level until September 30, 2000. Beginning October 1, 2000, however, the monthly rent of the renewed lease will be adjusted to a level commensurate with that of other franchisees whose leases were renewed April 1, 1999.[2]

Section 2805(d)(1)(A) authorizes the court to grant actual damages in the case of a violation. However, Plaintiff does not have any actual damages in this instance because he has continued to operate the station under the terms of the original franchise agreement. *See Noe v. Mobil Oil Corp.,* 503 F.Supp. 213, 216 (E.D.Mo. 1980) ("[T]here was no evidence that plaintiff suffered any actual damages from defendant's attempt to terminate his trial franchise, and hence plaintiff's prayer for actual damages will be denied.").

*Punitive Damages*

■ The court does not find punitive damages appropriate in this case. 15 U.S.C. § 2805(d)(1)(B) provides for the

---

1. 15 U.S.C. § 2805(e) precludes the court from a permanent injunction compelling continuation or renewal of the franchise relationship where the franchisor failed to comply with the requirements of § 2802, but "the franchisor demonstrates to the satisfaction of the court that ... the basis for such nonrenewal is a determination made by the franchisor in good faith and in the normal course of business ... to sell such premises." *See also*

*Kim v. Mobil Oil Corp.,* 1997 CCH ¶ 11,145 (D.Md.1997) (Chasanow, J.) (Plaintiff's Opposition Exhibit A). Defendants have not invoked their rights under this provision and therefore it does not act to preclude a renewal of the franchise relationship.

2. The papers submitted by the parties make it impossible for the court to determine the appropriate level of monthly rent.

**648**

award of "exemplary damages, where appropriate" in the case of "conduct of the franchisor which was in willful disregard for the requirements of section 2802 or 2803 of this title, or the rights of the franchisee thereunder." *See also Eden v. Amoco Oil Co.*, 741 F.Supp. 1192, 1195 (D.Md.1990) (defining wilfulness as used in the PMPA as "conduct that is pursued with a consciousness of wrongdoing or with a considered disregard to whether it violates the Act"). This litigation presented novel questions of law which were ultimately decided against Defendants. The record indicates that Defendants at least attempted to comply with the PMPA by providing notice and making an offer to sell the property. In light of the paucity of cases presenting a similar set of facts, the court cannot find that Defendants' actions manifested a "willful disregard" of Section 2802. *See Midwest Petroleum Co. v. American Petrofina Marketing, Inc.*, 644 F.Supp. 1067, 1072 (E.D.Mo.1986); *Covey v. Union Oil Co.*, 820 F.Supp. 1257, 1260 (D.Or.1993); *see also Eden*, 741 F.Supp. at 1196 ("Seeking a lawyer's advice does not, of course, immunize one's actions. But it is evidence to be considered in determining whether a decision was made in willful disregard of statutory obligations.").

*Attorney Fees*

▮ Plaintiff seeks an award of attorney fees. Section 2805(d)(1)(C) states that a prevailing franchisee shall be entitled to "reasonable attorney and expert witness fees to be paid by the franchisor." The court will grant the motion with respect to attorney fees incurred during the course of this litigation. *See Lyons v. Mobil Oil Corp.*, 554 F.Supp. 199, 201 (D.Conn.1982) ("[A] franchisee who obtains injunctive relief should be considered a 'prevailing party' for the purposes of § 2805(d)(1), regardless of whether actual or exemplary monetary damages are awarded.").

*Conclusion*

For the foregoing reasons, the court will grant Defendants' motion for summary judgment on the issue of remedies under the terms set forth above. The court will also deny as moot the motion to strike an exhibit not considered relevant for the court's decision. A separate Order will be entered.