PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JAMES D. DOTSON,

        *Plaintiff-Appellee,*

v.

PFIZER, INCORPORATED,

        *Defendant-Appellant.*

No. 07-1920

JAMES D. DOTSON,

        *Plaintiff-Appellant,*

v.

PFIZER, INCORPORATED,

        *Defendant-Appellee.*

No. 07-1979

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(5:04-cv-00722-BR)

Argued: September 23, 2008

Decided: March 4, 2009

Before MOTZ and AGEE, Circuit Judges,
and James C. CACHERIS, Senior United States District
Judge for the Eastern District of Virginia, sitting by
designation.

Affirmed in part, reversed in part, vacated in part, and remanded by published opinion. Senior Judge Cacheris wrote the opinion, in which Judge Motz and Judge Agee joined.

---

## COUNSEL

**ARGUED:** Thomas A. Farr, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Raleigh, North Carolina, for Appellant/Cross-Appellee. William Parker Barrett, WILLIAMS MULLEN, Raleigh, North Carolina, for Appellee/Cross-Appellant. **ON BRIEF:** James H. Stewart, III, Phillip J. Strach, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Raleigh, North Carolina, for Appellant/Cross-Appellee. Joshua M. Krasner, Jonathan R. Bumgarner, Brian C. Vick, WILLIAMS MULLEN, Raleigh, North Carolina, for Appellee/Cross-Appellant.

---

## OPINION

CACHERIS, Senior District Judge:

This case reaches the Court after a full trial on the merits in the Eastern District of North Carolina. James Dotson ("Dotson") brought suit against his employer, Pfizer, Inc. ("Pfizer"), for violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. (the "FMLA"). The jury awarded Dotson $1,876.00 on his FMLA interference claim and $331,429.25 on his retaliation claim. The district court awarded Dotson $333,305.25 in statutory liquidated damages, $375,000.00 in attorneys' fees, and $14,264.88 in costs. Each party appealed different rulings of the district court. Finding error with the district court's decision to deny pre-judgment interest, we affirm in part, reverse in part, vacate in part, and remand.

## I.

Pfizer terminated Dotson shortly after he and his wife returned from Russia with their newly-adopted child. Prior to his termination, Dotson had worked at Pfizer for approximately fifteen years. He began his career there in 1988 at an entry-level sales position. In 1991 he was promoted to District Manager; seven years later he became a Regional Manager responsible for more than 100 sales representatives.

In 2002, Dotson took on a new position as an Institutional Healthcare Account Manager in Pfizer's National Healthcare Organizations ("NHO") division. There, he dealt with managed care organizations, insurance companies, and large employers rather than healthcare providers. The parties dispute the facts related to Dotson's 2002 reassignment. Pfizer characterizes the new job as a demotion for unsatisfactory performance. Dotson notes that he did not take a pay cut and that he received no information indicating performance deficiencies. Approximately one year later, Dotson was reassigned again, this time as a Regional Account Manager in the same institutional healthcare division. In his new position, Dotson's immediate supervisor was Chris Kennedy ("Kennedy"), who reported to Regional Manager Patrick McElerney ("McElerney").

As part of his training as a sales representative, Dotson was instructed in the proper handling of sample packs of Pfizer products, called "starters." Sales representatives provide starters to doctors, who give them to their patients in order to get a patient "started" on a drug for which the doctor will then write prescriptions. The Food and Drug Administration regulates the use of starters. The Prescription Drug Marketing Act, 21 U.S.C. § 353 et seq. (the "PDMA"), covers their distribution. The PDMA requires Pfizer to track and account for any starters given to physicians. Pfizer uses electronic tracking and "starter activity forms" to fulfill its responsibilities under the statute.

The PDMA also requires pharmaceutical companies to report any improper diversions of starters or intentional falsifications of starter forms. Violations can result in sanctions ranging from fines and the loss of drug distribution rights to imprisonment for some criminal violations of the statute. Under its starter policies, Pfizer can discharge employees for violations; however, at the time Dotson was fired, the company did not provide specific details of its standards for discharge. The NHO division was not responsible for handling starters and did not receive starter activity forms or shipments of starters.

In early 2003, Dotson and his family began working with an adoption agency to adopt a child from Russia. Dotson called a Pfizer third-party benefits contractor to inquire about adoption benefits provided by the company. Later that year, Dotson and his wife learned that they could adopt a baby girl but would have to make at least two trips to Russia to complete the adoption. Dotson spoke with a Pfizer human resources ("HR") representative about taking leave during the adoption process. Testimony differed as to what the HR representative, Amy Burnell ("Burnell"), told Dotson about his intention to use accrued vacation time and the applicability of FMLA benefits. Burnell referred Dotson to another HR officer whom Dotson never contacted. He used accrued vacation time to take his first trip to Russia. Both parties agree that, around this time, Dotson's relationship with his immediate supervisor, Kennedy, was deteriorating.

Around August 2003, Dotson obtained starters from a Pfizer sales representative that he intended to give to the Director of Medicine for the North Carolina Highway Patrol. Pfizer alleges that Dotson's request for and subsequent handling of the starter violated company protocol. Later, after finding out that he was eligible to adopt and learning from the agency that it was customary to bring gifts for the orphanage, Dotson decided to obtain a case of starters of the antibiotic Zithromax to take to the orphanage in Russia. In connection

with this decision, the parties dispute Dotson's intent, his familiarity with starter protocol, and whether he knew that such an endeavor violated company policy. Dotson delivered the Zithromax to the orphanage on his first trip to Russia.

During a performance review shortly after that first trip, Dotson's two immediate supervisors informed him that they were unhappy with his job performance and expressed concern about his use of the Zithromax. Dotson later contacted his regional HR director, Ann Hodges ("Hodges"), to discuss the negative performance review. Hodges also said she was concerned about Dotson's handling of starters. After speaking with Hodges, Dotson left with his wife for a second trip to Russia. Pfizer then began an evaluation of Dotson's actions. As part of that evaluation, McElerney related a summary of Dotson's actions to Steve Harper, a Pfizer Vice President, who believed that the use of the Zithromax could be viewed as a prohibited *quid pro quo* with the Russian orphanage. Harper determined that Dotson's conduct warranted discharge, and an executive group within Pfizer management concurred. Pfizer terminated Dotson on November 11, 2003 — less than three weeks after Dotson and his wife returned from Russia with their adopted child. Dotson claims that the starter issue was used as a pretext to fire him and that the "policy" against his use of the starters was unknown to anyone outside the group that made the decision to terminate him. Pfizer did not report Dotson's alleged PDMA violation until 2005.

Dotson filed suit in September 2004. In October 2005, Pfizer amended its Answer to assert an after-acquired evidence defense against Dotson. The new defense related to Dotson's delivery of starters to the North Carolina Highway Patrol and to his purported misleading of a Pfizer starter control official, which Pfizer claims led to its late reporting of the PDMA violation. A jury trial began in May 2006 and lasted eight days. The jury found that Pfizer interfered with Dotson's rights to FMLA leave and that it discharged Dotson in retaliation for his exercise of those rights. It awarded him $1,876 on

his claim of interference and $331,429.25 on his retaliation claim. Pfizer filed a Motion for Judgment as a Matter of Law ("JMOL") and an alternative Motion for a New Trial in June 2006. After the trial, Dotson filed a Proposed Findings of Fact and Conclusions of Law Regarding Front Pay and a Motion for Liquidated Damages, Attorneys' Fees, and Costs. The Court denied Pfizer's JMOL motion and awarded Dotson $375,000 in liquidated damages, as well as attorneys' fees and costs. It denied Dotson's motion for front pay and pre-judgment interest. On appeal, Pfizer challenges the court's denial of its JMOL motion, the award of liquidated damages, and the amount of attorneys' fees awarded. Dotson appeals the court's denial of pre-judgment interest and front pay, and contends that the award of attorneys' fees was inadequate.

II.

Pfizer argues that the district court erred by denying its post-trial motion for judgment as a matter of law. We review the denial of a motion for judgment as a matter of law *de novo*, viewing the evidence in the light most favorable to the prevailing party. *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 354 (4th Cir. 2003) (citing *Austin v. Paramount Parks, Inc.*, 193 F.3d 715, 727 (4th Cir. 1999)). A trial court may grant judgment as a matter of law when it "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for" the non-moving party. Fed. R. Civ. P. 50(a)(1); *see Brown v. CSX Transp., Inc.*, 18 F.3d 245, 248 (4th Cir. 1994). A court, however, may not disturb the verdict where there was sufficient evidence for a reasonable jury to find in the non-movant's favor. *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 259 (4th Cir. 2001). "A trial court may not appropriately enter [JMOL] unless it concludes, after consideration of the record as a whole in the light most favorable to the non-movant, that the evidence presented supports only one reasonable verdict, in favor of the moving party." *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 458 (4th Cir. 1989) (citation omitted).

A.

Pfizer raises three grounds on which it contends the district court should have granted its motion for judgment as a matter of law on Dotson's FMLA retaliation claim. First, it argues that the FMLA does not provide for the type of intermittent adoption-related leave that he took. Second, Pfizer claims that Dotson did not request FMLA leave, and so a rational jury could not hold it liable for retaliating against him for exercising his FMLA rights. Third, Pfizer argues that Dotson could not show retaliatory animus by the persons who decided to fire him and that there was no evidence that the firing was pretextual.

## 1. *Intermittent Leave Under the FMLA*

The FMLA allows eligible employees 12 weeks of leave during any 12-month period "[b]ecause of the placement of a son or daughter with the employee for adoption or foster care." 29 U.S.C. § 2612(a)(1)(B).[1] An employee cannot take such leave intermittently "unless the employee and the employer . . . agree otherwise." *Id.* at § 2612(b)(1).

The parties do not dispute that Dotson took intermittent pre-adoption leave. Pfizer, though, suggests that Dotson's pre-adoption absences were taken intermittently without Pfizer's consent and thus fall outside the FMLA. Testimony showed, however, that Dotson kept the company informed of his need for adoption-related leave. In its brief, Pfizer acknowledged that other than for one work-related dinner, it permitted Dotson to take all of the leave that he requested. Pfizer claims that even though it allowed Dotson to take accrued leave intermittently, it could not have approved intermittent FMLA leave because he never specifically requested the use of intermittent FMLA leave.

---

[1]The parties stipulated that Dotson was an "eligible employee" under the FMLA.

Pfizer's argument fails because the FMLA does not require Dotson to specifically invoke its protections in order to benefit from it. Regulations promulgated by the Department of Labor "repeatedly emphasize that it is the employer's responsibility to determine the applicability of the FMLA and to consider requested leave as FMLA leave." *Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997) (citing 29 C.F.R. § 825.303(b)). Read in context, subsection (b)(1) to § 2612 does not create an additional hurdle for employees asking for adoption-related leave beyond the requirement that they make a request or requests for leave that is intermittent. Instead, the statutory language makes it clear that employers may, at their option, require that employees take FMLA leave for certain reasons (birth, adoption or foster care placement under § 2612(a)(1)(A)-(B)) in one block of up to twelve weeks rather than intermittently. The requirement that employer and employee must "agree" on intermittent leave means that employers can refuse to allow this type of leave in birth, adoption and foster care placement cases. By contrast, employees have an unfettered right to take FMLA leave because of a serious health condition intermittently when "medically necessary," with or without employer consent.[2] 29 U.S.C. § 2612(a)(1)(C)-(D). When the provisions are read side by side in this manner, the requirement that employer and employee must "agree" on intermittent leave does not clash with the generally-accepted position that no "magic words" are necessary to invoke the protections of the FMLA. *See Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007); *see also Rhoads v. F.D.I.C.*, 257 F.3d 373, 382-83 (4th Cir. 2001). Pfizer could not point to any evidence showing that it refused to allow Dotson to take adoption-related leave intermittently.

---

[2]Section 2612(b)(1) also states that, subject to several limitations, an employee has the right to intermittent leave under § 2612(a)(1)(E), which allows for time off for certain exigencies related to the active duty military service of a family member.

Courts that have allowed employers a defense based on the statute's requirement that the employer and employee "agree" on intermittent leave have done so when the employer expressly refused to agree to intermittent leave. *See Maynard v. Town of Monterey, Tenn.*, 75 Fed. Appx. 491, 493 (6th Cir. 2003); *Beyst v. Pinnacle Airlines, Inc.*, 2008 WL 2433201 at *7-8 (E.D. Mich., June 11, 2008) (granting an employer's motion for summary judgment on an "intermittent" FMLA claim where the employer expressly forbade intermittent leave in its Employee Handbook).[3]

Here, evidence showed that Pfizer agreed that Dotson could take his adoption-related leave intermittently. Dotson kept his supervisors informed about his need for adoption-related absences, which included two separate trips to Russia. No one at Pfizer suggested he could not take either trip. Dotson also contacted Pfizer's employee benefits contractor with questions related to his planned adoption. During the trial, he offered evidence that a Pfizer HR official misinformed him about available FMLA benefits, after which he did not seek to designate any of his time off as FMLA-protected. The jury, then, heard evidence from which it could reasonably infer that Pfizer either granted Dotson's requests for intermittent adoption-related leave or failed to properly inquire concerning the designation of leave. If Dotson was improperly dissuaded from pursuing his FMLA options, he could not have come to an agreement on a more formal intermittent leave schedule.[4]

---

[3]The plaintiff in *Beyst* did request, and was allowed, to take time off for incidents related to his newborn child. 2008 WL 2433201 at *7. The court refused to treat the employer's acquiescence to these intermittent leave requests as an agreement under § 2612(b)(1). *Id.* While such a finding may be understandable given the employer's explicit policy forbidding intermittent leave, we decline to accept language in the case suggesting that the plaintiff generally bears the burden of expressly invoking the FMLA.

[4]Because we find that Dotson has pointed to sufficient evidence showing that Pfizer either agreed to his intermittent adoption-related leave requests or misled him as to his eligibility for the FMLA, thus negating the possibility that he could come to a more formal agreement with Pfizer as to an intermittent leave schedule, we decline to address the district court's alternative rationale, based on the FMLA regulations contained at 29 C.F.R. §§ 825.203(b) and 825.112(d), for upholding the jury's finding.

In either case, Pfizer cannot now claim that it did not "agree" to allow Dotson to take the intermittent pre-adoption leave he requested and took.

### 2.    *Request for FMLA Leave*

Pfizer submits that the district court should have granted judgment in its favor because no evidence suggested that Dotson applied for FMLA leave or exercised his FMLA rights. The company argues that it could not have intended to retaliate against Dotson for using his FMLA rights when he did not actually exercise those rights.

In addition to providing a substantive (or "prescriptive") right to unpaid leave in certain situations, the FMLA also provides proscriptive rights "that protect employees from discrimination or retaliation for exercising their substantive rights under the FMLA." *Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006) (citing *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159-60 (4th Cir. 1998)). Section 2615 of the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). While the FMLA does not specifically forbid discharging an employee in retaliation for his use of FMLA leave, 29 C.F.R. § 825.220(c) states that employers are "prohibited from discriminating against employees or prospective employees who have used FMLA leave" and that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." Courts have recognized that the FMLA provides a cause of action for retaliation. *Blankenship v. Buchanan Gen. Hosp.*, 140 F. Supp. 2d 668, 671-72 (W.D. Va. 2001).

Relying principally on a case from the Eleventh Circuit, *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199 (11th Cir. 2001), Pfizer argues that for Dotson to establish unlawful

retaliation under the FMLA, he must show that Pfizer had notice that he was specifically invoking an FMLA right. Simply asserting that an employer had notice of an employee's need for leave for an FMLA-related reason, Pfizer suggests, cannot open the employer to FMLA retaliation liability.

Case law and federal regulations make it clear, however, that employees do not need to invoke the FMLA in order to benefit from its protections. The regulations do not require the employee to "expressly assert rights under the FMLA or even mention the FMLA"; instead, the employee "may only state that leave is needed for an expected birth or adoption, for example." 29 C.F.R. § 825.302(c). After the employee makes such a statement, the responsibility falls on the employer to inquire further about whether the employee is seeking FMLA leave. *Id.* "In providing notice, the employee need not use any magic words." *Sarnowski*, 510 F.3d at 402.

There is no question that Dotson gave Pfizer adequate notice of his need for leave during the adoption process. After he provided this information, the burden shifted to Pfizer to determine whether he was requesting FMLA leave. Pfizer has not shown that it made any inquiry into whether his adoption-related leave should have been classified as protected under the FMLA. Pfizer's legal argument would allow it to use its own failure to determine whether leave should be designated as FMLA-protected to block liability for retaliation. We decline to allow an employer to take advantage of its own lapse in such a way.

Language in *Strickland* does appear to countenance the view that, for a retaliation claim to proceed, an employer must be on notice that an employee specifically invoked the protection of the FMLA. *See* 510 F.3d at 1207. In *Strickland*, the employee had an argument with his supervisor and then left work. The employee claimed that he told his supervisor and another individual responsible for recording work absences that he was leaving because he was having trouble with his

diabetes. *Id.* at 1202-03. On these facts, the court found that the employer did not have notice that the employee was taking FMLA-protected leave; it did, however, allow the employee to press a FMLA interference claim. Thus, the *Strickland* court appeared to embrace a higher burden for making a retaliation claim under the statute. In our view, any such elevated evidentiary burden contrasts with the applicable FMLA notice regulations, which do not differentiate between the notice required to make interference claims and other claims under the FMLA. To the extent that *Strickland* stands for a higher retaliation burden, we decline to follow it.

In contrast to the last-minute, confusing statements made by the employee in *Strickland*, however, Dotson gave clear and advance notice that he was pursuing adoption, an FMLA-qualifying event. His testimony could lead a reasonable jury to find that Pfizer was on notice that he was inquiring about his FMLA options and that Pfizer did not fulfill its duty to inquire about whether his leave should be classified as FMLA-protected. Dotson also proffered evidence showing that he asked about the FMLA and received incorrect or misleading advice from a Pfizer HR official that led him to believe the law could not benefit him. Thus, even if we accepted the higher standard for a retaliation claim implied in *Strickland*, we would still find that Dotson presented sufficient evidence for a reasonable jury to believe that he was improperly prevented from invoking his FMLA rights and fired in retaliation for actions that should have been protected under the statute. Pfizer cannot use its own oversight to escape liability for retaliation by claiming it had no warning that the statute protected Dotson.

### 3.   *Retaliatory Animus and Pretext*

In order to prevail on a FMLA retaliation claim, Dotson must have shown evidence linking the adverse employment action taken against him to a "protected activity," in this case his adoption-related leave. *See Yashenko v. Harrah's NC*

*Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006) (analyzing FMLA retaliation claim under Title VII framework). When we review a finding of retaliation after a full trial on the merits, "our sole focus is 'discrimination *vel non*' — that is, whether in light of the applicable standard of review the jury's finding of unlawful retaliation is supportable." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998) (quoting *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 377 (4th Cir. 1995)).

Pfizer's position at trial was that it fired Dotson because his delivery of a starter to an orphanage in Russia created the impression of a *quid pro quo*, which could have had serious legal repercussions for Pfizer. This non-discriminatory explanation, if believed by the jury, would have rebutted Dotson's prima facie case of retaliatory firing.[5] Following the burden-shifting framework of *McDonnell Douglas*, which allows a finding of discrimination when the supposedly non-discriminatory reason for termination is shown to be pretextual, Dotson then put on evidence to show that Pfizer's reasons for firing him were a mere pretext for unlawful discrimination. *See Yashenko*, 446 F.3d at 551 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-06 (1973)).

Pfizer now argues that Dotson failed to prove retaliation at trial for two reasons: first, he did not show that any member of the group of Pfizer executives that made the decision to fire him bore any retaliatory animus toward him for his adoption-related leave; second, Dotson did not show that the reason Pfizer gave for firing him was pretextual. We believe, to the contrary, that under the standard of review for a JMOL decision, Dotson put on sufficient evidence to allow a jury to find both retaliatory animus and pretext. Because the evidence in

---

[5]In deciding Pfizer's motion for summary judgment, the district court found that Dotson made out a prima facie case of retaliation based on the timing of his firing under *Williams v. Cerberonics*, 871 F.2d 452, 457 (4th Cir. 1989). This finding was not challenged on appeal.

the record before us shows that a jury could rationally find that Pfizer's stated reason for firing Dotson was pretextual, we decline to address Pfizer's first argument in any detail.[6]

Dotson put on sufficient evidence of weaknesses and inconsistencies in Pfizer's account of its decision to fire him for a jury to find pretext. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997); *Blankenship v. Buchanan Gen. Hosp.*, 140 F. Supp. 2d 668, 674 (W.D. Va. 2001). First, Pfizer's starter policies were not so clearly drawn that Dotson's handling of starters was obviously wrongful. Dotson put on evidence showing that some Pfizer personnel were unaware that NHO division employees could not handle starters. Most importantly, none of the Pfizer employees who knew in advance about Dotson's plan to donate the Zithromax starters — including Kennedy, his direct supervisor, and McElerney, a member of the executive group that fired Dotson — took any action to stop him from donating the Zithromax. Neither Kennedy nor McElerney was disciplined for failing to stop him. A jury could rationally conclude that if such a donation constituted a violation serious enough to merit permanent dismissal, Pfizer higher-ups would have known to stop Dotson from going forward with it or, alternatively, would have suffered some consequence for their inaction.

The evidence also showed that the other two persons directly involved in obtaining starters for Dotson were not disciplined. Pfizer argues that the level of misconduct by these two persons and Dotson's two supervisors on one hand, and Dotson on the other, were quite different and should not be weighted equally under *Moore v. City of Charlotte*, 754 F.2d 1100, 1107 (4th Cir. 1985). Even if the conduct was not

---

[6]It is worth noting, however, that on cross-examination, McElerney — a member of the executive group that made the decision to fire Dotson — expressed his frustration at Dotson for missing a deadline due to an adoption-related trip to Russia.

precisely analogous, of the five persons involved directly or tangentially in mishandling starters, one was fired and the other four were not disciplined at all. That fact, taken in combination with other Pfizer employees' confusion over the company's starter policies and the timing of Dotson's firing, could lead a reasonable jury to find that Dotson's firing under these circumstances was pretextual.

B.

Pfizer suggests that the district court should have granted its motion for JMOL on Dotson's claim for FMLA interference because Dotson did not show that he incurred actual damages as a result of any interference with his rights under the FMLA. Dotson, however, put on sufficient evidence for a jury to find that he suffered a cognizable injury because of Pfizer's interference.

Dotson incurred actual damages when he was asked to work while traveling to Russia on leave that should have been FMLA-protected — work for which Pfizer did not give him a full day's credit. Had Pfizer treated the day Dotson spent working as a work day, rather than as paid vacation, Dotson would have been paid for an additional day of accrued vacation when he was terminated. A day's paid vacation is not valueless; it is a tangible employment benefit providing full pay for a day when no work is performed. As such, it should be considered a form of compensation subject to valuation. The section outlining damages for FMLA interferences explains that employers are liable for damages in "the amount of any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A)(i)(I). In our opinion, the "amount" of "employment benefits" or "other compensation" lost here is equal to the amount Dotson would have been paid on a day of paid vacation. While Dotson has raised a number of arguments that would support a finding of damages, the loss of

paid vacation is sufficient to overcome any damages-based hurdle to an FMLA interference claim.

C.

During the trial, Pfizer introduced evidence, discovered after the commencement of litigation, of what it claimed were Dotson's misrepresentations to Pfizer personnel regarding the doctor's signatures he obtained on the forms used to track starter distribution. During the performance review held in October 2003, Dotson's two immediate supervisors instructed him to contact Pfizer's Starter Administration Department to further discuss his distribution of starter drugs in Russia and North Carolina. Pfizer's evidence showed that during Dotson's conversation with Jim Batura ("Batura"), a Pfizer employee Dotson reached on the "compliance hotline," Dotson told Batura that he had received a signature from his family pediatrician, a Dr. Foster, acknowledging receipt of the Zithromax that he eventually donated to the Russian orphanage. Batura determined that while Dotson's actions may have violated Pfizer policy, they did not constitute a reportable offense under the PDMA.

During the course of litigation, Pfizer realized that Dr. Foster dated her signature after Dotson's trip to Russia. It questioned Dotson about the timing of the signature; Dotson then claimed that a Dr. Rusher had signed for the Zithromax prior to Dotson's trip to Russia, but that he had lost the starter form and sought a replacement form from Dr. Foster after he returned. In an affidavit, Dr. Rusher testified that he had no recollection of discussing Dotson's plan to donate the Zithromax or of signing a starter form. After receiving this new information, Batura determined that he had a duty to report several of Dotson's misrepresentations to the FDA. Pfizer argued that it would have fired Dotson for these misrepresentations, independent of its stated reason for terminating him in November 2003. After the jury returned its verdict, which indirectly indicated that it credited Pfizer's defense, Dotson

moved for judgment as a matter of law on the after-acquired evidence defense.[7]

An after-acquired evidence defense limits an employer's liability when the employer discovers evidence of "wrongdoing . . . of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362-63 (1995). In evaluating an after-acquired defense, a court "must look to the employer's actual employment practices and not merely the standards articulated in its employment manuals." *Sellers v. Mineta*, 358 F.3d 1058, 1064 (8th Cir. 2004) (citing *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 759 (9th Cir. 1996)).

Dotson argues that the district court should have rejected Pfizer's after-acquired evidence defense because the evidence "acquired" was in Pfizer's possession before his termination and, in any event, Dotson's alleged conduct would not normally have warranted discharge. He emphasizes a note from Kennedy to McElerney pointing out a discrepancy in the timing of Dotson's starter authorizations. Dotson contends that this note shows that Pfizer was aware of the starter problem, allegedly uncovered during the discovery process, before it fired Dotson.

---

[7]The amount of damages awarded by the jury indicated that it cut off back pay at or around the date on which Pfizer disclosed Dotson's alleged misrepresentations to the FDA — not, as normally required when an after-acquired defense is credited, at the time the new evidence was discovered. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362 (1995). The jury did not make a separate finding on the defense. The after-acquired evidence defense became an important issue on appeal because Pfizer argued that the jury's acceptance of its defense would provide an alternative ground for the district court's decision denying front pay. *See Wallace v. Dunn Constr. Co.*, 62 F.3d 374, 380 (11th Cir. 1995). We conclude that the district court did not abuse its discretion in denying front pay, and so have no need to determine whether the jury "credited" Pfizer's defense.

What was discovered during Dotson's deposition, however, was that he had misled Batura, the starter compliance official, by telling him that Dr. Foster had signed a starter form prior to Dotson's trip to Russia. This conversation, Pfizer claims, led it to refrain from contacting the FDA to report a problem with its handling of starters. Dotson's argument that the evidence is not truly "after-acquired" is specious. His supervisors, who may have known that something was amiss with Dotson's starter forms, directed him to call Pfizer's compliance department. Pfizer put on evidence showing that Dotson misled a compliance official and that the extent of the purported deception did not become clear until after litigation began and Pfizer obtained a new explanation from Dotson, which it later discovered was also questionable. The evidence was "after-acquired": Dotson's misleading of Batura was revealed only after Dotson filed suit.

The second question, which we decide using the same standard as the trial judge, is whether a reasonable jury could have found for Pfizer on its claim that it would have terminated Dotson for his allegedly misleading conversation with Batura. Pfizer argues that it would have terminated an employee for misrepresenting material facts to a company official investigating starter misuse. At trial, Pfizer introduced the testimony of Dawn Rogers, the Human Resources Vice President for Pfizer, who stated that Dotson would have been terminated based on what Pfizer discovered after the commencement of litigation. We conclude that this testimony would allow a reasonable jury to agree with Pfizer on this element of its after-acquired evidence defense, and so the district court correctly denied Dotson's motion for judgment as a matter of law.

Because we reject Dotson's assertion that the district court should have granted his motion for judgment as a matter of law on Pfizer's after-acquired evidence defense, it is clear that the court did not abuse its discretion in allowing Pfizer to amend its Answer or in denying Dotson's motion in limine to exclude the evidence from trial.

III.

Both parties question the district court's decisions related to damages and compensation. Pfizer appeals the liquidated damages award and argues that the court awarded excessive attorneys' fees in light of Dotson's limited recovery. Dotson claims that he is entitled to pre-judgment interest, front pay, and additional attorneys' fees.

We review a district court's rulings on questions of damages for abuse of discretion. *Doe v. Chao*, 511 F.3d 461, 467 (4th Cir. 2007); *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 868-69 (8th Cir. 2006); *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1424 (4th Cir. 1991). The district court "abuses its discretion only if its conclusions are based on mistaken legal principles or clearly erroneous factual findings." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001) (citation omitted).

A.

Dotson appeals the district court's denial of his request for front pay. He asked for approximately $8 million in front pay, including lost future earnings and benefits stretching fifteen years into the future — until, as Dotson explained, a planned early retirement at age 58.

Under the FMLA, a wronged employee is entitled to "such equitable relief as may be appropriate, including employment, reinstatement, and promotion," along with damages. 29 U.S.C. § 2617(a)(1)(B). The statute does not identify front pay as an equitable remedy, but we have recognized it as a proper form of relief that is "an alternative and complement to reinstatement." *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 307 (4th Cir. 1998). Determinations of front pay are made by the trial court sitting in equity. *Id.* at 307 (citing *Duke v. Uniroyal*, 928 F.2d 1413, 1424 (4th Cir. 1991)). A trial court must "temper" the use of front pay by recognizing

"the potential for windfall" to the plaintiff. *Duke*, 928 F.2d at 1424. We review the denial of an award of front pay for abuse of discretion. *See Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 504 (4th Cir. 2001).

The district court believed that front pay from the date of termination until Dotson's planned retirement was simply too speculative to award. The court cited *Peyton v. Dimario*, a Title VII case which held that front pay for 26 years was unduly speculative; the *Peyton* Court also noted that the balance of authority suggested that courts disfavored lifetime front pay awards for plaintiffs in their forties. *Peyton v. Dimario*, 287 F.3d 1121, 1129-30 (D.C. Cir. 2002). The district court stated that it would have been inclined to award front pay for a more limited duration — such as the approximately three years between Dotson's termination and the point at which he secured a similar though lesser-paying job at GlaxoSmithKline — had the jury's award plus liquidated damages not made Dotson whole by covering his projected losses over those three years.

Dotson objects to the district court's characterization of what he claimed would be uninterrupted future employment with Pfizer as speculative. He also disputes its determination that liquidated damages made him whole for his future losses. Dotson suggests that, since he has not found a position as remunerative as the one he held with Pfizer, he will not be "made whole" unless he receives compensation to make up the difference, starting at the date of his termination and looking more than a decade into the future.

Under these circumstances, we do not believe the district court abused its discretion in denying Dotson front pay. At the time the court ruled on Dotson's request for front pay, Dotson had secured full-time employment in the pharmaceutical services industry, making approximately $65,000 less than the approximately $232,000 in salary and benefits he made prior

to his termination. Thus, he had secured comparable, if not precisely equivalent, work at another major drug company.

Dotson goes to great lengths to show that front pay in his case would not be unduly speculative. The speculative nature of the inquiry, though, does not stem just from the question whether Dotson would have stayed with Pfizer through the end of his career had he not been fired. It also necessarily involves speculation as to what Dotson's post-termination future holds. The court was within its discretion to refuse to assume that Dotson would never earn a salary comparable to what he made at Pfizer, given his relative youth and education level. Considering that (1) the determination of front pay is inherently speculative; (2) Dotson was of a relatively young age when terminated; (3) he is highly educated and experienced; and (4) he sought front pay from the date of his termination until the date he claims he would have retired, fifteen years in the future, we cannot say that the district court abused its discretion in denying front pay.

Finally, Dotson finds error in the court's consideration of the role played by the liquidated damages in making him whole. If, as he argues, the remedial intent of the FMLA is to make wronged employees whole, it is difficult to understand why a lower court cannot consider the role of liquidated damages in reaching this overarching goal. Other courts have allowed such a consideration, although some have cautioned that the award of liquidated damages should play only a minor role in determining whether front pay is appropriate. *See*, *e.g.*, *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 490-91 (5th Cir. 2007); *Downes v. Volkswagen of America., Inc.*, 41 F.3d 1132, 1141 (7th Cir. 1994). Given the relatively short gap of two years that the court observed between Dotson's termination and his securing of roughly comparable employment, the court's consideration of liquidated damages in making Dotson whole was not an abuse of discretion.

B.

Dotson also claims that the district court improperly refused to award pre-judgment interest. Under the FMLA, an employer "shall be liable" for the pre-judgment interest on the amount of "any wages, salary, employment benefits, or other compensation denied or lost to [an employee] by reason of the [FMLA] violation." 29 U.S.C. § 2617(a)(1)(A)(i)-(ii); *see also Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 869 (8th Cir. 2006) (interpreting § 2617 to require pre-judgment interest).[8] The district court explained that it did not award pre-judgment interest because Dotson did not request it in the initial post-trial proceedings. Dotson did, however, request pre-judgment interest in his complaint and in a pre-trial brief. He raised the issue again in a Rule 59 motion to amend the district court's judgment on damages.[9] In its Memorandum Opinion deciding

---

[8]There is a discrepancy between the mandatory language of § 2617 and the permissive formulation of one regulation addressing FMLA remedies, which states that "the employee may be entitled to interest" on FMLA damages. 29 C.F.R. § 825.400(c). Here, as always, the plain meaning of the unambiguous statute controls. *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291-92 (1988) (citing *Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984)).

[9]Pre-judgment interest is considered to be part of the merits of a court's decision, and so a motion requesting such interest is properly classified as a Rule 59(e) motion to alter or amend a judgment. *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 176-77 & n.3 (1989); *see also Kosnoski v. Howley*, 33 F.3d 376, 378 (4th Cir. 1994). We have previously required, in an unpublished opinion, that to avoid waiving pre-judgment interest, a litigant must raise the issue within the time constraints imposed by Rule 59(e), which allows no more than 10 days to file a motion to alter or amend a judgment. *Hanson v. Cerrone & Assoc., Inc.*, 1993 WL 98777, at *3 (4th Cir. Apr. 15, 1993); *but see Macsenti v. Becker*, 237 F.3d 1223, 1245 (10th Cir. 2001) (finding no authority requiring a litigant to raise the issue of entitlement to pre-judgment interest via a Rule 59(e) motion to preserve an appeal when the issue was raised in the complaint). Here, the district court awarded judgment for damages and costs in two stages: first, it entered the jury award for retaliation and interference; second, the court invited briefing on other damages and costs to which Dotson might be

the parties' initial post-trial motions, the district court stated, in a footnote, that while pre-judgment interest "may also be awarded," Dotson had not asked for it in his initial post-trial brief. Mem. Op. of Aug. 29, 2007, at 3 n.2. For that reason, the district court denied Dotson's subsequent request for pre-judgment interest, made under Rule 59(e), as untimely. Mem. Op. of Nov. 19, 2007, at 3-5. In support of this finding, the court reasoned that pre-judgment interest constituted "additional" relief that would have required briefing within the schedule that it set for post-trial motions. *Id.* at 5.

We reverse the district court's decision because pre-judgment interest on FMLA damages is mandatory rather than discretionary. Pre-judgment interest also does not constitute the kind of "additional" relief that requires briefing — unlike other FMLA remedies like front pay and liquidated damages, which the district court has the discretion to reduce or deny outright. Pre-judgment interest automatically becomes part of the damages award under the plain terms of the statute. 29 U.S.C. § 2617(a)(1)(A)(i)-(ii). Given the statutory command to include pre-judgment interest as part of FMLA damages, the district court should have awarded pre-judgment interest regardless of whether Dotson reiterated his pre-trial requests for it in the post-trial motion. In this case — where pre-judgment interest was requested in several documents filed before trial — Dotson was entitled to the interest, which should have been awarded at the time the district court awarded him liquidated damages and other costs and fees.[10]

entitled. The court then entered a second order awarding liquidated damages, attorneys' fees, and costs, and denying front pay. Dotson filed his Rule 59(e) motion for pre-judgment interest within 10 days of the entry of this second order. He did not waive pre-judgment interest, and so the district court's decision is ripe for review.

[10]The district court noted that pre-judgment interest is not warranted automatically, at least insofar as the rate of interest is not defined by statute and different courts use different interest calculations. The question whether Dotson was entitled to pre-judgment interest, though, is separate from the question of what rate applies. The court could have found that Dotson was at least entitled to this relief without briefing — even if determining the appropriate interest rate would require additional briefing.

Pfizer's arguments in opposition lack merit. The case it cites to support its assertion that pre-judgment interest is discretionary addresses a different statute — one that does not provide for pre-judgment interest. *See Eden v. Amoco Oil Co.*, 741 F. Supp. 1192, 1196 (D. Md. 1990). We also reject Pfizer's contention that Dotson was made whole without pre-judgment interest. Regardless of whether a court believes that a plaintiff is made whole by a jury award alone, the FMLA requires the award of pre-judgment interest. In effect, Congress has stipulated as to what will make a wronged employee whole under the FMLA, and we are bound by that legislative decision.

C.

The FMLA entitles a wronged employee to an additional award of liquidated damages equal to the sum of the amount awarded for damages and the interest on that amount. 29 U.S.C. § 2617(a)(1)(A)(iii). Normally, liquidated damages are awarded automatically under the statute. If, however, the employer "proves to the satisfaction of the court" that the violation of § 2615 "was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation," the court, in its discretion, may choose not to award liquidated damages. *Id.* The employer has a "plain and substantial burden" to persuade the court that its failure was in good faith and that it would be unfair to impose liquidated damages. *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997) (quotation omitted) (interpreting liquidated damages provision of the Fair Labor Standards Act). The employer must show objective good faith. *See id.* (citing *Clifton D. Mayhew, Inc. v. Wirtz*, 413 F.2d 658, 661-62 (4th Cir. 1969)).

Pfizer's decision-makers, the company contends, did not know that Dotson had inquired about FMLA leave, and so the district court punished Pfizer for not knowing the statutory implications of Dotson's adoption-related leave. This argument ignores Pfizer's statutory burden of seeking out further

information and complying with the FMLA when an employee indicates that he or she is seeking leave for a protected reason. *See* 29 C.F.R. § 825.303(b). Pfizer had affirmative obligations it did not meet. The district court was well within its discretion to find that Pfizer did not make a showing of good faith.

Our decision that Dotson is entitled to pre-judgment interest, however, requires that we vacate the award of liquidated damages and return it to the district court for recalculation after the addition of pre-judgment interest. *See supra* at subsection III.B; 29 U.S.C. § 2617(a)(1)(A)(ii)-(iii) (prescribing liquidated damages equal to the sum of damages and pre-judgment interest).

## D.

Both parties contest the attorneys' fees awarded to Dotson's counsel. Pfizer claims that the amount of attorneys' fees awarded — $375,000 — was excessive considering that Dotson recovered $666,610.50 on his claims.

The FMLA directs the award of reasonable attorneys' fees to a prevailing plaintiff. 29 U.S.C. § 2617(a)(3); *see McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640 (4th Cir. 1998). The amount of attorneys' fees awarded is at the trial court's discretion. *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1359 (4th Cir. 1995) (citing *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994)). A reviewing court should reverse discretionary fee awards only "if under all the facts and circumstances [the award] is clearly wrong." *Id.* (citation and quotation omitted) (alteration in original). In calculating a reasonable lodestar fee, the district court looks to "the nature and extent of the services supplied, the customary hourly rate of compensation, the number of hours expended, the skill required, the complexity of the case, and the success achieved by the plaintiff." *Id.* (citing *Rum Creek Coal Sales*, 31 F.3d at 175). The reasonable number of hours and reasonable rate is

determined by reference to the twelve factor test set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974). *See, e.g.*, *McDonnell*, 134 F.3d at 640.

Pfizer claims that, because it prevailed on its after-acquired evidence defense, Dotson won only a limited victory. Thus, the Court should reduce the attorneys' fees awarded, because "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Even when an award of attorneys' fees is mandatory, the district court may decrease the amount of fees that might otherwise be awarded in order to account for the plaintiff's limited success." *McDonnell*, 134 F.3d at 641. Here, the district court reduced the amount claimed by Dotson's attorneys from $550,000 to $375,000. Even if Pfizer prevailed, or partially prevailed, on the after-acquired evidence defense it raised, we do not find the district court's attorneys' fee award "clearly wrong." *Martin*, 48 F.3d at 1359. The court properly took into account Dotson's limited recovery and reduced the fee award accordingly.

The district court limited Dotson's attorneys' fees because he did not obtain all the relief requested in his complaint. Dotson claims he is entitled to higher attorneys' fees, since the district court wrongfully denied Dotson the full relief he requested. Because we hold that the district court did not abuse its discretion in denying front pay, it is clear that the court also did not err by limiting Dotson's fees based on his failure to recover front pay.

In its post-trial ruling on Dotson's motion to amend the judgment, the district court denied Dotson's request for additional attorneys' fees without prejudice, allowing him to renew his request "upon conclusion of the appellate process in his favor." Mem. Op. of November 19, 2007, at 7. Our decision that Dotson should have been awarded pre-judgment interest — which will require a re-calculation of liquidated damages — means that Dotson will make a larger overall

recovery on his legal claims. In accordance with the district court's earlier decision, we vacate the attorneys' fee award and return it to that court for reconsideration based on Dotson's additional recovery.

## IV.

To recapitulate, we hold that Dotson is entitled to pre-judgment interest under 29 U.S.C. § 2617(a)(1)(A)(i)-(ii). For that reason, the attorneys' fees and liquidated damages must be recalculated after pre-judgment interest is added to Dotson's award. We affirm the district court's judgment in all other respects.

*AFFIRMED IN PART, REVERSED IN PART,*
*VACATED IN PART, AND REMANDED*