AGEE, Circuit Judge,
dissenting:
As the Supreme Court has stressed, Courts of Appeals in administrative agency cases must engage in a “meaningful review” to determine whether the record supports the agency’s conclusions. Dickinson v. Zurko, 527 U.S. 150, 162, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). We are to undertake that review to assure we are “not simply rubber-stamping agency factfinding.” Id. In my view, the majority fails in that obligation to engage in a meaningful review. Instead, it permits the administrative law judge’s (“ALJ’s”) fallacious post hoc ergo propter hoc basis for causation to pass review and affirms a *336 front pay award that is patently unreasonable and bears no relation to Gunther’s prospective future losses. I therefore respectfully dissent,
I. Causation
The ALJ found that Gunther met her burden to prove causation solely based on the sequence of events leading to her termination of employment. . In the ALJ’s view, the timeline of events was in itself sufficient to prove a causal connection between Gunther’s protected activity and subsequent termination because her “termination resulted after her return from a leave of absence that was precipitated by an investigation into the matters raised by the SEC [SOX] complaint.” J.A. 52. The Administrative Review Board (the “Board”) affirmed the ALJ’s finding of causation, reciting only the chronology of events with one following in time after the other with the last being Gunther’s termination, J.A. 15.
To see why the ALJ’s causation finding is not simply erroneous but illusory, it is necessary to consider, not simply recite, the standard that appellate courts employ when reviewing an administrative agency decision. The Court will set aside an administrative agency’s conclusions that are “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.” Welch v. Chao, 536 F.3d 269, 276 (4th Cir.2008) (quoting 5 U.S.C. § 706(2)(A))[1]; Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996) (explaining that deference is owed only where the ALJ’s finding was “supported by substantial evidence and was reached based upon a correct application of the relevant law”). A reviewing Court is obliged to take into account the entire record, including the evidence opposed to the agency’s view from which conflicting inferences reasonably could be drawn. Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 487-88, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Thus, where the record “clearly precludes [the] Board’s decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence,” the Court must set aside the agency’s findings. Id. at 490, 71 S.Ct. 456.
To prevail on her SOX retaliation claim, Gunther shoulders the burden of establishing causation by showing that her protected activity was a “contributing factor” in her termination. 29 C.F.R. § 1980.109(a). The contributing factor standard of causation is not “toothless.” Feldman v. Law Enf't Assocs. Corp., 752 F.3d 339, 350 (4th Cir.2014). Under this standard, a complainant must still point to evidence showing a causal link between protected activity and adverse employment action. Id.
In deciding that Gunther established a causal nexus between her filing of a SOX complaint and her termination, the ALJ looked only at the sequence of the events that led to the cessation of Gunther’s employment at Deltek. The ALJ concluded that because Gunther’s termination followed protected activity, the protected activity must have caused her termination. But nothing tied the chain of events to causation other than happenstance.
The ALJ’s only discussion of proof of causation is, in toto, the following:
Had neither complaint been filed, ... she would not have returned to work on the day that she did, and she would not have been terminated based upon her actions at the time she returned. Ac *337 cordingly, Complainant’s termination was causally related to the protected activities.
J.A. 52. It was solely upon this finding that the ALJ concluded Gunther met her burden of proof of the element of causation.
But this is a post hoe ergo propter hoc conclusion that is erroneous as a matter of law. Post hoc ergo propter hoc is “a fallacy because it makes ¿n assumption based on the false inference that a temporal relationship proves a causal relationship.” McClain v. Metabolife Int’l, Inc., 401 F.3d 1233, 1243 (11th Cir.2005); see also Huss v. Gayden, 571 F.3d 442, 459 (5th Cir.2009) (noting “the post hoc ergo propter hoc fallacy assumes causality from temporal sequence”). The mere circumstance that protected activity precedes termination is not proof of a causal connection between the two.
Retaliation under SOX necessarily requires more than the mere occurrence of protected activity followed by adverse employment action, but that is all that the ALJ found to satisfy Gunther’s burden of proving the element of causation. The statute cannot be read to mean, as the ALJ and Board found, that whenever an employee engages in protected activity prior to an adverse employment action like termination, the plaintiff has met her burden as to causation. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir.2000) (noting that a retaliation claim cannot rest on the logical fallacy of post hoc ergo prop-ter hoc, i.e., “after this, therefore because of this”); Gibson v. Old Town Trolley Tours of Washington, D.C., Inc., 160 F.3d 177, 182 (4th Cir.1998) (accord); Bermudez v. TRC Holdings, Inc., 138 F.3d 1176, 1179 (7th Cir.1998) (“Timing may be an important clue to causation, but does not eliminate the need to show causation — and [the plaintiff] really has nothing but the post hoc ergo propter hoc ‘argument’ to stand on.”).
Proof of causation requires an evidentia-ry link between the protected act and an adverse event. That evidentiary nexus mandates evidence of actual causation, which is not supplied by the metaphysical concept that an event later in time could only have happened after an earlier event. But that is the ALJ’s stated basis of finding causation. The majority ignores this error and relies on a new basis for causation that neither the ALJ nor Board found: “that the explanation proffered by Deltek for Gunther’s termination was pretextual — or, more colloquially, not true.” Maj. op. at 329. The ALJ’s finding that Del-tek’s proffered reasons for terminating Gunther were pretextual came only after the ALJ determined that Gunther satisfied the elements of her prima facie case, including causation. At no time did the ALJ or the Board tie any part of a prima facie finding of causation to any finding of pretext, which came only after the burden had shifted to Deltek to show an affirmative defense.[2]
*338 Congress has imposed-on this Court the .responsibility to ensure that an agency “keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals.” Universal Camera Corp., 340 U.S. at 490, 71 S.Ct. 456. Under that standard, I am compelled to conclude based on this record that the ALJ erred as a matter of law in determining Gunther met her burden of proof for causation. See Welch, 536 F.3d at 276 (indicating we owe no deference to an agency determination that is “otherwise not in accordance with law”). Accordingly, I would reverse the decision of the Board and direct that judgment be entered for Deltek.
II. Damages
The ALJ awarded Gunther four years of front pay in the amount of $300,352 in addition to tuition reimbursement of $30,000 for the same period, although the ALJ recognized that Gunther “was essentially an entry level employee in a new field.” J.A. 81. Gunther had neither a high school nor a college degree when Deltek hired her approximately one year before her termination, but the ALJ opined that Gunther would be “unlikely to obtain employment in her chosen field without the degree, as she did not work for [Deltek] for a sufficient period of time to obtain on-the-job qualifications.”[3] J.A. 82. For reasons not apparent in the record, the ALJ then awarded Gunther four years of front pay and tuition reimbursement so that she could “attend a university full-time, without working, if she so chooses” in order to obtain a bachelor’s degree in accounting or finance. Id. Although I would reverse the ALJ’s decision on liability on the merits, I also address the damages award in view of the majority’s approval of an award that is rankly speculative and not substantially supported by the record. See Dotson v. Pfizer, Inc., 558 F.3d 284, 300 (4th Cir.2009).
It is again helpful to consider the standard by which we review the ALJ’s findings. We will defer to an ALJ’s factual findings only if supported by substantial evidence. 5 U.S.C. § 706(2)(E). “Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Consol. Edison Co. of N.Y. v. N.L.R.B., 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). “Even if legitimate reasons exist for rejecting [or crediting] certain evidence, the [ALJ] cannot do so for no reason or for the wrong reason.” King v. Califano, 615 F.2d 1018, 1020 (4th Cir.1980). See also Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981) (“[I]t is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason.”).
SOX entitles a prevailing employee only to such “relief necessary to make the employee whole,” including reinstatement, back pay with interest, and various other fees and costs. 18 U.S.C. § 1514A(c). The statute does not identify front pay as an available remedy, but front pay “has been recognized as a possible remedy in cases under the Sarbanes-Oxley and other whistleblower statutes enforced by OSHA in circumstances where reinstatement would not be appropriate.” Department of *339 Labor, Procedures for the Handling of Retaliation Complaints Under Section 806 of the Sarbanes-Oxley Act of 2002, as Amended, 80 FR 11865-02. Front pay, however, is “disfavored.” Sellers v. Mineta, 358 F.3d 1058, 1063 (8th Cir.2004). As such, we have cautioned courts to employ “discretion, restraint and balance” when considering whether to award front pay in’ order to avoid a “windfall” to the party seeking front pay. Duke v. Uniroyal Inc., 928 F.2d 1413, 1424 (4th Cir.1991). A plaintiff bears the burden of providing “the essential data necessary to calculate a reasonably certain front pay award.” McKnight v. Gen. Motors Corp., 973 F.2d 1366, 1372 (7th Cir.1992). We will not give deference to front pay awards that are “unduly speculative.” Dotson, 558 F.3d at 300.
The amount of front pay awarded in this case lacks substantial evidentiary support. The ALJ explicitly tied the award of four years’ front pay, with full time tuition reimbursement for those years, to Gunther’s supposed entitlement to a four-year college degree. But Gunther declined to present testimony from a vocational expert, a job counselor, or any neutral witness to support the ALJ’s conclusion that she would be unable to secure comparable employment absent a college degree. The only record evidence to support the ALJ’s award is Gunther’s self-serving speculation as to her prospective ability to secure similar employment. On this record, she has failed to meet the required burden of proof to adduce the “essential data” necessary to calculate a reasonable front pay award. See McKnight, 973 F.2d at 1372.
Gunther’s anecdotal and self-serving testimony that a four-year college degree would be a prerequisite for obtaining comparable employment is belied by the fact that Deltek hired Gunther just one year prior to her termination without any college education and without relevant on-the-job training. Gunther admitted she had none of the usual certifications for a financial analyst position and was not pursuing any. J.A. 1281-82 (testifying that she was not a Certified Internal Auditor, Certified Fraud Examiner, or a Charted Financial Analyst and lacked a certificate in financial forensics). Her only certification was “a certificate in common sense.” J.A. 1282.
Put simply, the ALJ did not temper the front pay calculation to avoid a “windfall” in Gunther’s favor. See Duke, 928 F.2d at 1424. During her brief stay at Deltek, Gunther was enrolled only in a two-year program at a community college where she took two courses. She was not seeking a bachelor’s degree, nor was she attending school full time. Further, Gunther discontinued taking classes after her termination. No law requires Deltek to bear the onerous burden of subsidizing Gunther’s full time, four-year college education, a qualification Gunther didn’t need to obtain her post with Deltek just one year earlier. There is no record evidence remotely supporting this award, which actually puts Gunther in a far superior position than if she had remained at Deltek.
For example, the Deltek tuition reimbursement policy was limited to two classes per semester. J.A. 2224. And any such reimbursement plan was tied to Del-tek receiving the benefit of the employee’s services and a commitment to future services, a fact not accounted for in the tuition or front pay awards. Even if Gunther had taken the maximum reimbursable course-load year round (assuming the availability of three semesters) her maximum coverage over four years would be 24 classes, far fewer than required for a bachelor’s degree. See U.S. Dep’t of Educ., NCES 1999-179, Credit Production and Progress Toward the Bachelor’s Degree: An Analy *340 sis of Postsecondary Transcripts for Beginning Students at 4-Year Institutions, at iii (1999) (noting a bachelor’s degree generally requires 120 earned credit hours). Assuming each of those 24 courses was worth three credit hours and that she never missed one and performed satisfactorily, Gunther would only accumulate 72 credit hours in four years under the Del-tek plan — barely half those needed for a bachelor’s degree. Gunther’s tuition award bonanza thus puts her in a far better position than she could have been in while employed at Deltek.
Nothing in, the record shows Gunther had a specific plan, much less a plan approved by Deltek, to obtain any level of further education while employed there. The ALJ’s conclusion that Gunther was entitled to attend school full time to obtain a bachelor’s degree is fundamentally divorced from what is necessary to make Gunther whole. See 18 U.S.C. § 1514A(c). See also Shore v. Fed. Express Corp., 777 F.2d 1155, 1160 (6th Cir.1985) (“The cost of obtaining a college degree, cited by the plaintiff as a basis for the front pay award, cannot be considered a post-judgment effect of defendant’s discrimination.... However desirable a college education may be, we cannot impose this cost on the defendant in this case.”); Ogden v. Wax Works, Inc., 29 F.Supp.2d 1008 (N.D.Iowa 1998) (“[T]he expense of a college education should not be borne by [the employer] under the guise of fro.nt pay.”).
The “windfall” character of the front pay award is also apparent from its extended duration. Gunther worked for Deltek for approximately one year and, for a substantial period, she was out on Deltek-ap-proved paid medical leave. The front pay award exceeds the amount of time Deltek employed Gunther by at least three years. A front pay award extending years into the future where the. employee’s tenure lasted approximately a year is patently speculative. Moreover, Gunther has failed to present any evidence justifying such a lengthy prospective award. Four years of front pay is an arbitrary award plucked from space without any record basis.
The majority, for its part, accepts the ALJ’s four-year front pay award because the ALJ rejected Gunther’s demand for ten years of front pay. Under the majority’s logic, had Gunther only had the foresight to demand twenty years of front pay, she would have received an eight-year pay award. But rejection of Gunther’s unsupported front pay request of ten years does not fill the void of record evidence to support the actual award. The only record “evidence” to support the award is Gunther’s self-serving speculation. See, e.g., J.A. 2197-2201, 2288-95.
Searching for some evidentiary basis on which to affirm the ALJ’s front pay determination, the majority points to the ALJ’s finding that Gunther did not work for Del-tek long enough to “‘obtain on-the-job qualifications’” and is “‘now unlikely to obtain’ comparable employment without an undergraduate degree.” Maj. op. at 385 (quoting J.A. 82). This reasoning misses the mark, for if Gunther could obtain sufficient “on-the-job qualifications” then she would not require a college degree. This is not a circumstance where a longtime employee is terminated from a post she held for years and years and faces a vastly different job market with expanded job-credential requirements. Deltek hired Gunther just one year prior to her termination without a college degree, and nothing precludes another employer from doing the same.
The award of front pay and tuition in this case is an arbitrary and capricious agency act. The Court owes no deference to the ALJ’s decision on front pay, as it lacks a basis in the record and shows no *341 “discretion, restraint and balance,” which is required to avoid a front pay “windfall” such as Gunther received in this case. Duke, 928 F.2d at 1424.
III. Conclusion
For all the foregoing reasons, I believe the majority opinion fails to take account of the Supreme Court’s direction that we engage in “meaningful review” of agency decisions. Dickinson, 527 U.S. at 162, 119 S.Ct. 1816. Instead, it affirms a finding of causation premised on nothing more than post hoc ergo propter hoc reasoning and a front pay award that is “unduly speculative,” Dotson, 558 F.3d at 300, and amounts to a gross “windfall,” Duke, 928 F.2d at 1424. I respectfully dissent and would reverse the judgment of the Board.

. I have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

. The ALJ found causation solely based on a post hoc ergo propter hoc logical fallacy, and the majority is foreclosed from saving the ALJ’s causation determination for reasons the ALJ did not articulate in the prima facie causation stage. "[A] reviewing court ... must judge the propriety of [agency] action solely by the grounds invoked by the agency.” SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Where, as here, the agency has made a finding "for no reason or for the wrong reason,” King v. Califano, 615 F.2d 1018, 1020 (4th Cir.1980), the Court is "powerless to affirm ... by substituting what it considers to be a more adequate or proper basis.” Chenery, 332 U.S. at 196, 67 S.Ct. 1575; see also N.L.R.B. v. Ky. River Cmty. Care, Inc., 532 U.S. 706, 721, 121 S.Ct. 1861, 149 L.Ed.2d 939 (2001) ("We may not enforce the Board’s order by applying a legal standard the Board did not adopt.”); Nken v. Holder, 585 F.3d 818, 822 (4th Cir.2009) *338 ("Established precedent dictates that a court may not guess at what an agency meant to say, but must instead restrict itself to what the agency actually did say.”).

. Gunther represented that she had obtained a GED at some point.